**UNITED STATES of America,**
**Plaintiff-Appellee,**

**v.**

**John Joe ARRELLANO,**
**Defendant-Appellant.**

**No. 86–5075.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 30, 1986.

Decided March 17, 1987.

---

Barry Ted Moskowitz; and Bruce R. Castetter, San Diego, Cal., for the plaintiff-appellee.

Ezekiel E. Cortez, San Diego, Cal., for the defendant-appellant.

Before NELSON, HALL and KOZINSKI, Circuit Judges.

NELSON, Circuit Judge:

John Joe Arrellano was convicted under 18 U.S.C. § 924(b) (transporting a firearm in foreign commerce with intent to commit a felony or with knowledge or reasonable cause to believe it would be used to commit a felony), 18 U.S.C. §§ 922(a)(6) and 924(a) (making false statements to a firearms dealer in connection with the purchase of a firearm), and 18 U.S.C. § 545 (unlawfully bringing merchandise into the United States). He appeals his conviction on the grounds that the mens rea standard in 18 U.S.C. § 924(b) under which he was convicted, "reasonable cause to believe," is unconstitutionally vague and that the district court abused its discretion in admitting prejudicial hearsay testimony. We reverse Arrellano's conviction under 18 U.S.C. § 924(b) because the "reasonable cause to believe" standard does not refer to the transporter's mental state regarding his own acts. The clause applies to a transporter who has reasonable cause to believe that a third person to whom he supplies weapons or ammunition will use them to commit a felony. We affirm as to all other counts.

## FACTS

Arrellano lived with Edith Brasche in a mobile home in Rosarito Beach, Mexico. In early 1985, Arrellano moved out of their home after arguments with Brasche. According to the landlord, Edmundo Bustillos, an apparently drunk Arrellano returned to their home on June 7, 1985, and found that his key would not unlock the door. Bustillos told Arrellano that the police were looking for him. Before Arrellano left, he yelled, "I'm going to come back and I'm going to kill ... her and kill you too." Mexican police later arrested Arrellano but his wife dropped the charges.

On July 15, 1985, Arrellano purchased a .38 caliber pistol in California. On the required forms of sale, the clerk recorded an address in Chula Vista, California, as Arrellano's local address and an address in Antioch, California, where Arrellano's sister lived, as Arrellano's permanent address. Arrellano told the clerk that he lived in Antioch but that he and his wife were staying in Chula Vista for the summer. Arrellano's sister testified that Arrellano only lived with her once for approximately one month in 1984. A postal officer in Chula Vista stated that the Chula Vista address given by Arrellano was non-existent.

On August 3, 1985, Arrellano returned to the store and paid the balance of the purchase price on the pistol. On the Alcohol, Tobacco, and Firearms form, which Arrellano was required to complete to pick up the gun, he again recorded the Antioch address. Later that day, Arrellano crossed the border into Mexico.

Two days later, on August 5, Arrellano drove to his former residence to pick up a few items of furniture. When Brasche emerged from the trailer, Arrellano grabbed her and started hitting her. Bus-

tillos arrived and pleaded with Arrellano to stop. Arrellano shot Bustillos in the shoulder and fatally shot Brasche as she tried to flee. Later that day, Arrellano crossed the border into the United States and called an emergency operator. He told the operator that he had shot two people in Mexico. Police apprehended Arrellano and confiscated the gun. The bullets fired by Arrellano were identified as coming from the pistol he purchased in California.

Arrellano was charged with violating 18 U.S.C. § 924(b), 18 U.S.C. §§ 922(a)(6), 924(a), and 18 U.S.C. § 545. The jury convicted Arrellano on all four counts. Arrellano was sentenced to ten years in prison for violating § 924(b), two concurrent five-year terms for violating § 922(a)(6) and § 924(a), and a two-year term for violating § 545.

On appeal, Arrellano contends that the mens rea standard of "reasonable cause to believe" in § 924(b) is unconstitutionally vague and that the district court abused its discretion in admitting hearsay testimony that Brasche feared Arrellano.

## DISCUSSION

Interpretation of a statute presents a question of law reviewable de novo. *United ed States v. Wilson*, 720 F.2d 608, 609 n. 2 (9th Cir.1983), *cert. denied*, 465 U.S. 1034, 104 S.Ct. 1304, 79 L.Ed.2d 703 (1984); *United States v. Moreno-Pulido*, 695 F.2d 1141, 1143 (9th Cir.1983).

At trial, the judge instructed the jury that it could convict Arrellano under § 924(b) if it found

"that [Arrellano] transported the firearm from the United States in Mexico with either of the following three states of mind:

One. An intent to commit homicide with the firearm. Or, two, with knowledge that a homicide is to be committed with the firearm. Or, three, with reasonable cause to believe that a homicide is to be committed with the firearm." [1]

On the verdict form, next to count one (§ 924(b)), the jury added in parenthesis "element 3." The judge questioned the jury and clarified that the jury intended this addition to the verdict form to indicate that they had selected the third mental state in convicting Arrellano under § 924(b).

■ Arrellano contends that the "reasonable cause to believe" standard of § 924(b) is unconstitutionally vague and that therefore his conviction should be reversed. We do not reach this question, however, because we believe that the "reasonable cause to believe" standard of § 924(b) does not apply to Arrellano under the facts of this case. Although Arrellano did not raise the issue of misapplication of the mens rea standard below or on appeal, we conclude that the district court's instruction on the third mental state of § 924(b) is reviewable. Fed.R.Crim.P. 52(b) ("[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court").

Because of the district judge's careful, precise charge to the jury, and because of his thoughtful post-verdict questioning, we can be sure that when Arrellano crossed over into Mexico, he had the third mental state listed in section 924(b)—reasonable cause to believe that a felony was to be committed with the gun that he carried. The jury thus found that Arrellano did not intend to kill Ms. Brasche when he crossed the border, but that he had reason to believe that he would do so. We must therefore consider whether section 924(b) applies to those who cross state or national borders with a gun, not intending to commit a felony with it, but harboring a reasonable

1. Section 924(b) provides as follows:

Whoever, with intent to commit therewith an offense punishable by imprisonment for a term exceeding one year, or with knowledge or reasonable cause to believe that an offense punishable by imprisonment for a term exceeding one year is to be committed therewith, ships, transports, or receives a firearm or any ammunition in interstate or foreign commerce shall be fined not more than $10,-000, or imprisoned not more than ten years, or both.

18 U.S.C. § 924(b) (1982).

belief that they might at some later and unspecified time do so.[2]

We start with the language of section 924(b). The first clause of the section speaks in the active voice. It clearly refers to a transporter who intends, at the time he crosses the border, to commit a felony himself by use of the weapon. The second clause, however, uses the passive voice. It refers to transportation of a weapon while having "knowledge or reasonable cause to believe that an offense . . . is to be committed" with the gun transported. If the transporter does not, however, *intend* to commit a felony, it is difficult to see how he can have reasonable cause to believe that a felony will be committed. In effect, the transporter would have to believe that, at some future time, he will form the intent to commit a crime and that he will act on that intent. While this interpretation is not entirely out of the question, it is a strained construction of the statute's language. The idea that a person can have reasonable cause to believe he will commit an act he does not intend to commit is, at best, counterintuitive. The statute is much more plausibly read as addressing crimes to be committed by the transporter in the first clause alone. The second clause is most plausibly read as a limited prohibition against the facilitation of particularly serious crimes. *See generally* LaFave & Scott 509–10. That is, if the accused transports the weapon for the purpose of delivering it to others, with the knowledge or reasonable belief that those others will use it in the commission of a felony, he would violate this provision.

While the statute's legislative history is of little help,[3] reading section 924(b) in this fashion comports with the limited nature of federal jurisdiction over common law crimes. The interpretation of the clause in the manner suggested by the government might federalize a large number of hitherto local crimes, and criminalize behavior having only the most tenuous connection to violent crime. This is because the government's rationale is not easily limited in time and place. Unless the accused is transporting a weapon for the purpose of use in a specific crime (by himself or someone else), almost any subsequent use of the weapon could arguably be foreseeable. After all, anyone carrying a weapon might reasonably foresee that at some indefinite future time he will be in a situation where he might use the weapon for purposes of a felony, even though he has no such intent at the time he transports the weapon. We will not lightly infer congressional intent to extend the scope of federal criminal laws so far.

It would be a miscarriage of justice to uphold Arrellano's conviction under a statute that does not apply to him.[4] Even though he failed to make the argument below, we must reverse his conviction under § 924(b). *See United States v. Bustillo,* 789 F.2d 1364, 1367–68 (9th Cir.1986).

Arrellano gave no reason for reversing his conviction on the other counts, so we affirm them all.

Affirmed in part and reversed in part.

---

**2.** Government counsel suggested at oral argument that section 924(b) was meant to cover conditional intent. In this case, that would mean that Arrellano went to Mexico with the gun not intending to kill Ms. Brasche unless she refused him the money he demanded. But conditional intent is still intent. If, for example, a defendant breaks into a woman's house intending to rape her if she is there, he has committed a burglary whether or not she is in fact there. *See* W. LaFave & A. Scott, Criminal Law 200 (1972). Here the jury rejected a finding of intent, which must be interpreted as also rejecting any finding of conditional intent.

**3.** The Report accompanying the Omnibus Crime Control and Safe Streets Act (the legislation enacting section 924(b)) includes no explanation of the section, only a paraphrase of its terms. S.Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Admin.News 2112, 2207.

**4.** The statute that does apply to him is the Mexican law against murder. The record below shows that Mexico has issued an arrest warrant, but has not as yet requested extradition.