**Robert William HAIRE, Sr.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America; Malcolm Baldrige, Secretary of Commerce; United States Department of Commerce, Defendants-Appellees.**

**No. 88-1627.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 13, 1989.

Decided March 9, 1989.

Mark D. Patrizio, San Francisco, Cal., for plaintiff/appellant.

Jacob M. Lewis, Washington, D.C., for defendants/appellees.

Before NORRIS, NOONAN and LEAVY, Circuit Judges.

NOONAN, Circuit Judge:

Robert W. Haire brought suit against the United States under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504 seeking to recover attorney's fees and costs incurred in a proceeding under the Export Administration Act (EAA), 50 U.S.C.App. § 2401 et seq. The district court dismissed Haire's suit for lack of jurisdiction, and Haire appealed. We hold that jurisdiction did exist and that the EAJA does not apply to the EAA proceeding.

## BACKGROUND

Haire sought to export two upgraded wafer polishers used in manufacturing semi conductors to Czechoslovakia. The two machines were seized by Customs, acting under the authority of the EAA, 50 U.S.C.App. § 2411(a)(2)(B), at Los Angeles Airport in February 1984. On November 6,

1984, the General Counsel of the Department of Commerce issued a temporary order against Haire, denying him the privilege of exporting commodities or technical data. This order was followed on April 3, 1985, with a letter to Haire from the Commerce Department's Office of Export Enforcement charging him with violating Export Administration Regulations, 15 C.F.R. § 387.3(a) and (b) and § 387.4.

Haire sought a hearing both on the temporary denial order and the charged violations. The hearing was held March 17–21, 1986. Administrative Law Judge Thomas W. Hoya concluded that Haire had not "knowingly" violated the EAA. He ordered Haire's name deleted from the temporary denial order and dismissed the charges against him. Hoya stated that his decision was given in accordance with the EAA, 50 U.S.C.App. § 2412(c). The order was affirmed by a delegate of the Secretary on July 23, 1986.

Haire then applied for attorney's fees of approximately $100,000 under the EAJA. Judge Hoya concluded that a § 2412(c) hearing was not an "adversary adjudication" within the meaning of the EAJA and dismissed Haire's application. The delegate of the Secretary, on May 4, 1987, affirmed the dismissal, at the same time notifying Haire of "his right under 15 C.F.R. § 18.23 to seek judicial review of the Department's final decision."

Haire then brought this suit in the district court. He alleged jurisdiction under the EAJA, 5 U.S.C. § 504(c)(2), which provides that a person "dissatisfied with a determination of fees" may appeal the determination "to the court of the United States having jurisdiction to review the merits of the underlying decision of the agency adversary adjudication." The district court held that it did not have jurisdiction to review the merits of the underlying decision and therefore dismissed Haire's action. He appealed to this court.

## ANALYSIS

In this case of first impression we have to consider the intermeshing of two statutes, the Export Administration Act and the Equal Access to Justice Act, and the significance of the references in the statutes to the Administrative Procedure Act.

■ *Jurisdiction.* The EAA, 50 U.S.C. App. § 2412(c) and (d) says that the Secretary's orders on civil sanctions and license denials are not subject to judicial review. How, then, can there be a district court with jurisdiction to review the merits of the underlying decision?

Haire has an answer: A court does have authority to entertain a case under § 2412(c) where the Secretary exceeds his statutory authority. *Dart v. United States,* 848 F.2d 217, 231 (D.C.Cir.1988). The successful appellant in that case, William Dart, was a co-respondent with Haire in the Commerce Department proceedings. The Secretary reversed the administrative law judge's decisions on sanctions against Dart. The appeals court ruled that the Secretary had no such statutory power to reverse. Haire contends that Dart, in effect, received judicial review on the merits; therefore Dart faces no jurisdictional barrier if he appeals to the district court for attorney's fees. Haire urges that he should not be worse off than Dart because Haire won rather than lost before the Secretary.

*Dart,* however, explicitly did not examine "the merits of the Secretary's decision." *Id.* at 231. It is, therefore, not authority for the proposition that a district court has jurisdiction to review the merits of the underlying decision. Dart is not better off than Haire, and *Dart* does not help Haire.

Haire, however, advances a second and more attractive argument. The district courts do have jurisdiction over the collection of civil penalties. Exercising that jurisdiction, they are to examine the issues already determined by the Secretary de novo. 50 U.S.C.App. § 2410(f). De novo examination is a species of review. It is a review of the merits. District courts, therefore, do have jurisdiction to review the merits of the underlying decision. The jurisdictional requirement of the EAJA, 5 U.S.C. § 504(c)(2) is met.

■ National security does not require a different result. The EAA does provide for the administrative law judge to receive evidence in camera. 50 U.S.C.App. § 2412(c)(1). If evidence should be confined in camera, it may be so confined in the district court. Congress intended the EAA to be criminally enforced. *Id.* § 2410(a) and (b). Criminal enforcement in a district court would usually involve as much publicity about the technology involved as would review by a district court of a fee award. Examination of the issues de novo by the district courts in civil collection suits would also necessarily involve disclosure of the same information that would come out in a district court's review of a fee award. Disclosure in the district court was contemplated by Congress in the criminal and civil sections of the EAA. There is no reason to suppose a national security barrier was constructed by Congress against review of a fee determination.

The EAJA was enacted "to increase accessibility to justice and thereby ensure the legitimacy and fairness of the law." *Escobar Ruiz v. I.N.S.,* 838 F.2d 1020, 1028 (9th Cir.1988) (en banc). The remedial sweep of the statute is not to be defeated by "hypertechnical interpretation." *Id.* at 1025. Since a district court may review the merits of the underlying decision, jurisdiction does exist in the district court to review the denial of a fee to Haire.

The Commerce Department conceded as much by its regulations, 15 C.F.R. § 18.23, and its General Counsel's notification to Haire. Although concession alone could not create jurisdiction, the Commerce Department's initial position was at one with the position here reached. It is also the position that would be reached in any future case by virtue of the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, 102 Stat. 1107, 1361–62.

■ *Adversary adjudication.* An adversary adjudication under the EAJA is expressly defined by the statute to mean "an adjudication under section 554 of this title in which the United States is represented by counsel or otherwise, but excludes an adjudication for the purpose of granting or renewing a license." 5 U.S.C. § 504(b)(1)(C). The United States was represented by counsel in Haire's hearing. Was the hearing "under section 554"?

■ *Escobar Ruiz* held that the phrase "under section 554" should be interpreted under a broad "defined under" standard, rather than a restrictive "governed by" approach, that is, the court must look at the procedures by which hearings "are actually conducted, rather than determining whether such hearings are technically governed by the APA." *Id.* at 1023. A hearing is "under section 554" if it meets that section's definition of an adjudication required by statute to be determined on the record after an opportunity for an agency hearing. *Id.* at 1024.

Since *Escobar Ruiz* was decided, it has been distinguished by the Sixth Circuit in relation to the Federal Employees Compensation Act. *Owens v. Brock,* 860 F.2d 1363 (6th Cir.1988). First, that court observed that *Escobar Ruiz* involved aliens lacking language skills and in special need of legal assistance. Second, that court noted that INS proceedings unlike those for federal employee compensation were not "specifically excepted from section 554." *Id.* at 1366–67.

The first distinction is not significant. Almost all proceedings where the United States is a party and a person's legal rights are being determined require the assistance of counsel. An alien, no doubt, stands in special need. But even sophisticated American businessmen cannot cope with the intricacies of a complex statutory scheme without good lawyers at their side. To the extent that *Escobar Ruiz* rests on the perception that counsel are necessary in an adversary proceeding where the United States is represented by counsel, it governs our case.

The second point made by *Owens* does pinpoint a salient difficulty in mechanically applying *Escobar Ruiz.* Nothing in the Immigration and Nationality Act precluded application of the EAJA. *Escobar Ruiz,* 838 F.2d at 1027–1029. The attempt by the government in *Escobar Ruiz* to find a con-

gressional intent to bar the accused of attorney's fees in the INA's provision that counsel was to be "at no expense to the Government," 8 U.S.C. § 1362, was met by the observation that the EAJA was enacted in 1980, twenty-eight years after the INA, and addressed a problem different from that of representation of the alien. *Escobar Ruiz*, 838 F.2d at 1028. The statutory history here is different.

The EAA was adopted by Congress with the declared purpose of giving "special emphasis to the need to control exports of technology (and goods which contribute to the transfer of such technology) which could make a significant contribution to the military potential of any country or combination of countries which would be detrimental to the national security of the United States." 50 U.S.C.App. § 2401(8). It is the further policy of Congress not to control export trade "except when such controls (A) are necessary to further fundamental national security, foreign policy, or short supply objectives, (B) will clearly further such objectives, and (C) are administered consistent with standards of due process." *Id.* § 2402(10). The Secretary of Commerce (the Secretary) is given authority to require export licenses for items on "the control list." *Id.* § 2403(a) and (b). The Secretary of Defense is given specific authority to identify goods and technology to be put on the control list. *Id.* § 2404(c)(2). These purposes and procedures underline the focus of the EAA on foreign policy and national security objectives that are not part of the normal business of courts. The statute is an exercise in foreign relations; we must respect its precise and particular phrasing.

The EAJA was adopted in 1980 with the explicit requirement that an adversary adjudication be "under section 554." In 1985 Congress inserted § 2412(a) in the Export Administration Act of 1979. The new section reads in its entirety:

Except as provided in section 11(c)(2) and subsection (c) of this section, the functions exercised under this Act are excluded from the operation of sections 551, 553 through 559, and 701 through 706 of Title 5, United States Code.

The two exceptions are for enforcement of the provision against participation in foreign boycotts, 50 U.S.C.App. § 2410(c)(2) ["Section 11(c)(2)"], crossreferencing to § 2407, and for § 2412(c).

Subsection 2412(c) was the principal section under which Administrative Law Judge Hoya proceeded. It, too, was new in 1985. It provided: "Subject to the provisions of this subsection, any such hearing shall be conducted in accordance with sections 556 and 557 of Title 5, United States Code." The omission of any reference restoring section 554—now expressly excluded by subsection (a)—could scarcely be plainer.

*A fortiori* the omission appears to be intentional when § 2410(c)(2)(B) provides that any administrative sanction for violation of the antiboycott regulations under the EAA must comply "with section 554 through 557 of Title 5." This provision was in place in 1985 when Congress added the hearing provision of relevance here. Congress knew how to bring in section 554; it did not do so in § 2412(c). Indeed Congress expressly rejected a bill that would have made section 554 applicable. *See* H.R. 483, 98 Cong. 1st Sess. § 8(c)(2)(C) (1983).

The contention is advanced by Haire that Congress did not need to mention § 554 because §§ 556 and 557, which were made applicable, embody a crossreference to § 554. True, there are crossreferences to both § 553 and § 554 in §§ 556 and 557. But the crossreferences do not restore the sections expressly excluded by § 2412(a).

Most fundamentally, the EAA does not meet the standard set forth in *Escobar Ruiz*. Under that standard, a proceeding must comport with the requirements of § 554 even if the proceeding is not technically governed by that section. Section 554 specifically does not apply to administrative proceedings if "there is involved the conduct of military or foreign affairs functions." 5 U.S.C. § 554(a)(4). The proceedings against Haire "involved" the conduct of such functions. *Escobar Ruiz* is not controlling because Congress expressly determined that "the functions" of the Secretary administering the EAA were "exclud-

ed" from "the operation" of section 554. As section 554 does not operate to govern these functions it does not define the proceedings in which these functions are exercised.

A strong policy, enunciated and enforced in *Escobar Ruiz*, exists to have the government pay when its unjustified opposition has inflicted heavy attorney's fees upon a citizen. But a strong policy also exists against a court imposing fees on the government where Congress has not agreed to pay. In our case there is a complicated statutory scheme in the area of foreign relations, a statute carefully amended by a Congress picking and choosing the statutory references to the Administrative Procedure Act and making these amendments after the EAJA with its reference to section 554 was in place. In effect, Congress determined that a proceeding under § 2412(c) was not "under" § 554. We conclude that the § 2412(c) was therefore not an adversary adjudication within the meaning of the EAJA.

The same conclusion holds to the extent that Haire's proceeding was governed by 50 U.S.C.App. § 2412(d). This portion of the statute does not even contain a reference to the APA §§ 556 and 557. It is therefore wholly governed by the exemption from the APA set out in § 2412(a).

The parties are to bear their own costs.

REMANDED with directions to enter judgment for the United States.

LEAVY, Circuit Judge, concurring specially:

Although I agree with the majority that the district court's decision should stand, I write separately because I am convinced that the district court correctly dismissed Haire's action for lack of jurisdiction, given the language of the EAA, 50 U.S.C.App. § 2412(c) and (d), saying that orders of the secretary "shall be final and not subject to judicial review."

I disagree with the majority's view that the EAJA's jurisdictional requirement was met under 50 U.S.C.App. § 2410(f). Civil actions for recovery of penalties under § 2410(f) are available only "in the discretion of the head or agency concerned," and

must be brought in the name of the United States. The decision to seek or not seek enforcement is left to the secretary of state, treasury, agriculture, commerce, labor, and maybe even other department heads. Only if the government prevails at the administrative level can the enforcement action be brought.

It is only the government that can proceed under § 2410(f) and then only if a penalty is imposed at the administrative level.

Because Haire prevailed over the government at the administrative level, because the government imposed no penalty under § 2410(f) and because Haire, not the government, brought the present action, § 2410(f) is inapplicable to confer jurisdiction on the district court.

The entire act is designed to regulate exports to controlled countries, to accommodate national security, to advance foreign policy to deal with short supply. In that context, it makes sense to give department heads the option of whether to proceed with penalty enforcements under § 2410(f) or to avoid judicial scrutiny on issues affecting foreign relations. The concept that an administrative head can consent to judicial review only by pursuit of a penalty action is consistent with the express renunciation of judicial review in § 2412(c) and (d). I would simply affirm.