**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Arnold I. MANDEL; Rona K. Mandel,
Defendants–Appellees.**

No. 88–1418.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 16, 1989.

Decided Sept. 14, 1990.

---

**12.** This is especially true in light of the fact that the tax court tries its cases without a jury.

Thomas E. Flynn, Asst. U.S. Atty., Sacramento, Cal., for plaintiff-appellant.

Daniel F. Cook, Topel & Goodman, San Francisco, Cal., Dale A. Drozd, Blackmon and Drozd, Sacramento, Cal., for defendants-appellees.

Before FARRIS, PREGERSON and RYMER, Circuit Judges.

RYMER, Circuit Judge:

This appeal raises the issue of whether a criminal defendant charged with exporting items on the Commodity Control List in violation of the Export Administration Act of 1979 is entitled to discovery of Department of Commerce records relied on by the Secretary in promulgating commodity control categories within which the exported items are listed. The district court held in a published opinion, *United States v. Mandel*, 696 F.Supp. 505 (E.D.Cal.1988), that discovery was appropriate because defendants in a criminal case are entitled to challenge the Secretary's decision to place specific items on the list, and that limited, "basis in fact" review of the Secretary's decision does not implicate considerations giving rise to a political question. We disagree that the Secretary's decision can be subjected to judicial review, or that the basis for his decision is material to the defense of an EAA violation, and reverse.

I

Arnold and Rona Mandel were indicted on July 17, 1987, and charged with one count of conspiracy and ten counts of illegally exporting controlled commodities without a license in violation of the Export Administration Act of 1979, 18 U.S.C. § 371, 50 U.S.C.App. § 2410(a).[1] Arnold

---

1. 50 U.S.C.App. § 2410(a) provides:
   Except as provided in subsection (b) of this section, whoever knowingly violates or conspires to or attempts to violate any provision of this Act or any regulation, order, or license issued thereunder shall be fined not more than five times the value of the exports involved or $50,000, whichever is greater, or imprisoned not more than 5 years, or both.
   The EAA has since been amended. All references to the Export Administration Act are to the Act as it existed in 1982 and 1983. Refer-

Mandel was also charged with four counts, and Rona Mandel of two counts, of falsifying shipper's export declarations in violation of 18 U.S.C. § 1001.

The indictment alleges that a Hong Kong company called Fortune Enterprise Company placed orders for sophisticated computers, oscilloscopes, and electronic test equipment with the defendants beginning in June of 1982. The defendants responded by ordering the equipment from American manufacturers and making arrangements to ship the equipment to Hong Kong. Some of this equipment was listed in Categories 1529A, 1565A, and 1584A of the CCL. 15 C.F.R. § 399.1, Supp. 1. The defendants could not export this equipment to Hong Kong without a validated export license from the Department of Commerce. *Id.;* 50 U.S.C.App. § 2410(a). An application for such a license sent by the defendants to the Commerce Department on July 9, 1983 was returned, after the Department assigned it an application number, as inadequate.[2] The defendants did not resubmit the application. Instead, between July 30, 1982 and August 17, 1983, they shipped more than $933,000.00 of equipment to the Hong Kong company, without export licenses. The indictment also charges that the Mandels falsified export documents, in order to avoid detection, by stating on them that they had obtained export licenses, using the application number assigned by the Commerce Department as a substitute for a license number.

The EAA provides the executive branch with power to impose export controls for reasons of national security, foreign policy, or domestic short supply. 50 U.S.C.App. §§ 2402(2), (10) and 2404-06. These controls are implemented through licensing requirements for commodities which meet the criteria set forth in the Act. The power to require export licenses for such commodities is vested in the Secretary of Commerce. 50 U.S.C.App. § 2403(a). It is the responsibility of the Secretary to establish and maintain a list of commodities, the Commodity Control List ("CCL"), for which export licenses are required. 50 U.S.C. App. § 2403(b), 2404(c). The CCL describes the categories of controlled commodities, the countries for which export licenses are required, and the type of license needed. 15 C.F.R. § 399.1, Supp. 1 (1982).

The Act contains an elaborate set of criteria which governs the Secretary's imposition of export controls. 50 U.S.C.App. § 2403. Section 2403 directs the Secretary to make a finding regarding the foreign availability of items before he may restrict their exportation. The Secretary must consider whether the commodities to be controlled are available without restriction from sources outside the United States, whether the export of those commodities is restricted pursuant to a multilateral agreement to which the United States is a party, and whether other nations possess capabilities with respect to such commodities comparable to those of the United States. 50 U.S.C.App. §§ 2403(c), 2404(d)-(f).

The items the defendants are charged with exporting were controlled for national security reasons.[3] *See* 15 C.F.R. § 399.1, Supp. 1, Categories 1529A, 1563A, 1584A. The Secretary may impose national security controls on a commodity "only to the extent ... necessary (A) to restrict the export of goods and technology which would make a significant contribution to the military potential of any other country or combination of countries which would prove detrimental to the national security

---

ences to the regulations implementing the Act are to the 1982 version of the Code of Federal Regulations.

2. The EAA provides elaborate internal review and appeal procedures regarding the denial of an export license. *See United States v. Moller-Butcher,* 560 F.Supp. 550, 554 n. 7 (D.Mass. 1983). The denial of a license application is subject to the review of several agencies. Once a denial is made, the applicant has the opportu-

nity to respond in writing before a final determination is made. 50 U.S.C.App. § 2409(f)(2). *See United States v. Helmy,* 712 F.Supp. 1423, 1433 n. 14 (E.D.Cal.1989).

3. These items were controlled in cooperation with the member countries of the Coordinating Committee for Multilateral Export Controls ("COCOM"). COCOM member nations are the NATO countries, excluding Iceland, plus Japan.

of the United States." 50 U.S.C.App. §§ 2402(2)(A), 2404(a)(1); *see also* 50 U.S.C. App. § 2403(d).

Section 2404 provides for periodic review of the commodities subject to national security controls to insure that they continue to satisfy the conditions for imposition of export controls. The Secretary must issue regulations providing for review, including a foreign availability determination, of items subject to national security controls at least every three years in the case of controls maintained cooperatively with other countries and annually in the case of all other controls. 50 U.S.C.App. § 2404(c)(3). The Secretary must review the foreign availability of items which require a validated export license on a continuing basis. *See* 50 U.S.C.App. § 2404(f)(1).[4]

After the indictment was returned, the Mandels moved to discover all documents in the possession of a number of investigative and intelligence agencies relating to the factors set forth in sections 2402, 2403, and 2404, for the purpose of determining "whether the government followed the legislative mandate ... in placing the items listed in the indictment" on the CCL. The district court entered an order denying the motion insofar as it called for the production of information in the possession of any government agency except the Department of Commerce. However the court required the government to produce the administrative record pertaining to the Secretary's decision to place on the CCL those items that the defendants were charged with exporting. *Mandel*, 696 F.Supp. at 518.

Following the government's motion for reconsideration, the court changed the scope of its discovery order to require the production of:

all records of the Department of Commerce relied upon by the Secretary of Commerce in promulgating commodity control categories 1584A, 1565A, and 1529A as they existed during the years 1982 and 1983.

The government notified the court that it would respectfully decline to comply with the order, which it believed unjustified. The court then entered an order "exclud[ing] from the trial of this case any and all evidence showing that the commodities allegedly exported by the defendants were in fact on the Commodity Control List."

The government contends that the discovery request should have been denied because it was not material to the defense, a criminal defendant cannot challenge the Secretary's decision to place a commodity on the CCL, and the Secretary's decision to require export controls is an unreviewable political question. The Mandels argue that the district court did not abuse its discretion because they showed that a criminal defendant has a due process right to challenge the Secretary's administrative decision, and that that decision is not an unreviewable political question.

## II

The district court had jurisdiction under 18 U.S.C. §§ 371, 1001, 3231 and 50 U.S.C. App. 2410(a). Our jurisdiction rests upon 18 U.S.C. § 3731, which permits the

---

**4.** The Secretary of Commerce has established an ongoing control list review process by which items are added to and removed from the CCL. List review for national security controlled items is undertaken both to meet the requirements of the EAA and to prepare for negotiations in COCOM with allies of the United States. During this process, items on the CCL undergo a number of separate reviews in which the foreign availability and military potential of the items are examined. Following review by Technical Advisory Committees ("TACs"), Technical Working Groups ("TWGs"), and Technical Task Groups ("TTGs"), composed of experts from the government and from the nation's high technology industries, a proposal for expanded controls, reduced controls, or maintenance of exist-

ing multilateral controls is submitted to COCOM through the United States delegate. COCOM then undertakes extensive review and deliberation of export controls on particular items, again considering foreign availability and military potential. COCOM's confidential deliberations involve discussions of sensitive political, national security, and foreign policy matters not only of the United States, but also of the other members. If the COCOM allies reach a consensus to control an item, the United States then imposes national security controls by the authority of the Department of Commerce under the EAA. Other COCOM member countries impose national security controls under their national laws at the same time.

Government to appeal from a decision or order of a district court "suppressing or excluding evidence" in a criminal proceeding.

### III

The district court's discovery rulings under Fed.R.Crim.P. 16 are reviewed for an abuse of discretion, but the court's legal construction of Rule 16 is reviewed de novo. *United States v. Iglesias*, 881 F.2d 1519, 1523 (9th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1154, 107 L.Ed.2d 1057 (1990). The district court's construction of the Export Administration Act is reviewed de novo. *See United States v. Arrellano*, 812 F.2d 1209, 1211 (9th Cir.1987), *modified*, 835 F.2d 235 (9th Cir.1987).

### IV

■ Fed.R.Crim.P. 16(a)(1)(C) provides that a criminal defendant is entitled to discovery of materials "which are within the possession, custody, or control of the government, and which are material to the preparation of the defendant's defense." Rule 16 permits discovery that is "relevant to the development of a possible defense." *United States v. Clegg*, 740 F.2d 16, 18 (9th Cir.1984). To obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality. *United States v. Little*, 753 F.2d 1420, 1445 (9th Cir.1984); *United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir.1984). Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the Government is in possession of information helpful to the

defense. *See Little*, 753 F.2d at 1445; *Cadet*, 727 F.2d at 1466–68.

■ The Mandels made no threshold factual showing of materiality.[5] The district court was unpersuaded by the government's argument that an insufficient preliminary showing had been made, because "the information necessary to make a showing, if it can be made at all, is in the possession of the Government." *Mandel*, 696 F.Supp. at 511 n. 15. It is unnecessary for us to decide whether there can ever be any circumstance where the fact that information is available only to the government excuses a showing of materiality because in this case, the Mandels made no showing either that the Secretary's actions in placing the exported items on the CCL were not in accordance with the law, or that they were unable to make such a showing.

While the Federal Rules of Criminal Procedure do not set the outer limits of permissible discovery, *see Cadet*, 727 F.2d at 1466; *United States v. Richter*, 488 F.2d 170, 173 (9th Cir.1973), ordering production by the government without any preliminary showing of materiality is inconsistent with Rule 16. *See Richter*, 488 F.2d at 174 & n. 14 (construing former Rule 16(b), predecessor to current Rule 16(a)(1)(C)). Particularly where, as here, the government has shown that complying with the request would be unduly burdensome,[6] it is incumbent on the district court to consider the government interests asserted in light of the materiality shown. *See Cadet*, 727 F.2d at 1468. Without a factual showing there is no basis upon which the court may exercise its discretion, and for it to ignore the requirement is to abuse its discretion.[7]

---

5. It is not necessary for a defendant to make as strong a showing of materiality to uphold the trial court's granting of discovery as it would to overturn a denial of discovery. *See Cadet*, 727 F.2d at 1468. However neither the Mandels nor the district court point to authority that discovery of the government may be ordered without *any* showing of materiality. To the contrary, "[m]ateriality is a necessary prerequisite to discovery." *United States v. United States Dist. Court*, 717 F.2d 478, 480 (9th Cir.1983).

6. The district court made no findings on the degree of burden to the government of complying with the discovery order.

7. In the absence of facts suggesting that the Secretary acted contrary to law, it is difficult to see how the information requested could be material to preparation of the Mandels' defense. Conviction under 50 U.S.C.App. 2410(a) requires proof that a defendant (1) exported an item on the CCL, and (2) acted knowingly. The propriety of listing an item on the CCL is not an element and is therefore irrelevant to the guilt or innocence of a defendant. *United States v. Spawr Optical Research, Inc.*, 864 F.2d 1467, 1473 (9th Cir.1988), *cert. denied,* — U.S. ——, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989); *see also United States v. Gregg*, 829 F.2d 1430, 1437 (8th

V

Instead of requiring a preliminary factual showing of materiality, the district court determined that defendants "may tender as a defense the issue of whether the Secretary had no basis in fact in either initially placing and/or maintaining the exported items on the CCL," so that discovery must be allowed as to that issue. *Mandel,* 696 F.Supp. at 517–18. It relied on two Supreme Court cases, *Estep v. United States,* 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946) and *United States v. Mendoza–Lopez,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), in concluding that defendants are entitled to judicial review of whether there was any basis in fact for placement of the exported items on the CCL. After its decision was rendered, we held in *United States v. Spawr Optical Research, Inc.,* 864 F.2d 1467 (9th Cir. 1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989) *("Spawr II"),* that a court must defer to the Secretary's determination that a specific item was included on the CCL. *Spawr II* controls this case.[8] However the Mandels argue that *Spawr II* was wrongly decided, and directly conflicts with *Estep* and *Mendoza–Lopez.*

In *Spawr II* defendants collaterally challenged their convictions for exporting laser mirrors to the Soviet Union without a license,[9] *see United States v. Spawr Optical Research, Inc.,* 685 F.2d 1076 (9th Cir. 1982), *cert. denied,* 461 U.S. 905, 103 S.Ct. 1875, 76 L.Ed.2d 807 (1983) *("Spawr I"),* on the ground that the government failed to disclose material exculpatory evidence which would have established that the mirrors were not on the CCL and did not require an export license. They did not challenge the proposition that, in a criminal trial, the Secretary's decision that particular items *should be* included on the CCL was not reviewable, but rather challenged the court's deferring to the Secretary's determination that specific items exported by the Spawrs *were* included on the CCL. *Spawr II,* 864 F.2d at 1472–73. We held:

> In this context, we cannot construe the 1969 Act or its regulations to accommodate judicial factfinding on intricate licensing questions. Congress has designated the Secretary as the coordinating official in the area of export administration. It would severely undermine the Secretary's authority if judges and juries in individual criminal proceedings were permitted to reverse licensing determinations. And it would convert the judicial system into a policy-making forum, one in which the judiciary possess significantly less expertise and resources than the Secretary. Congress did not intend this chaotic and potentially dangerous result.

> . . . . .

> ... [T]he Secretary has determined that the Spawrs' mirrors could not be exported without an export license. Right or wrong, the trial court must accept this determination as a matter of law.... Because the licensing issue was not an element of the charged offenses, the Spawrs are not denied due process or the right to a jury trial by deference to the Secretary's determination.

*Id.* at 1473.[10]

The Mandels in effect concede that *Spawr II* is dispositive but urge us to fol-

---

Cir.1987), *cert. denied,* 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988) (policy factors of 50 U.S.C.App. §§ 2401 and 2402 for Secretary to consider in imposing export restrictions are not elements of criminal offense under EAA); *Moller–Butcher,* 560 F.Supp. at 552–53 (whether item would make significant contribution to military potential of another country not element of offense under EAA).

**8.** The panel unanimously agreed that the Secretary's decision to place a commodity on the Commodity Control List is not subject to judicial review. *Spawr II,* 864 F.2d at 1473 (Brunetti, J.), 1474 (Pregerson, J., dissenting).

**9.** The Spawrs were indicted under the *1969* EAA. *See Spawr II,* 864 F.2d at 1469 n. 2.

**10.** The text and legislative history support this conclusion. 50 U.S.C.App. § 2412(a) explicitly precludes judicial review of the Secretary's decision under the Administrative Procedure Act ("APA"). Even more clearly, the Senate Report on the Export Administration Act of 1979 stated that the legislation "continues the exemption of all functions exercised under the Act from the Administrative Procedure Act *and from judicial review.*" S.Rep. No. 96–169 at 17, *reprinted in* 1979 U.S.Code Cong. & Admin.News at 1147, 1164 (emphasis added).

low *Estep* and *Mendoza–Lopez*. However, we may reconsider an earlier Circuit precedent only when "an intervening Supreme Court decision undermines an existing precedent ... and both cases are closely on point." *Landreth v. Commissioner*, 859 F.2d 643, 648 (9th Cir.1988) (quoting *United States v. Lancellotti*, 761 F.2d 1363, 1366 (9th Cir.1985)). Neither *Mendoza–Lopez* nor *Estep* was an intervening decision. Thus, *Spawr II* is binding precedent which can only be overruled on en banc rehearing. *See Long v. Bureau of Economic Analysis*, 646 F.2d 1310, 1320 (9th Cir.), *vacated on other grounds*, 454 U.S. 934, 102 S.Ct. 468, 70 L.Ed.2d 242 (1981); *Charleston v. United States*, 444 F.2d 504, 506 (9th Cir.), *cert. dismissed*, 404 U.S. 916, 92 S.Ct. 241, 30 L.Ed.2d 191 (1971).

Even if we were free to revisit *Spawr II, Estep* and *Mendoza–Lopez* are not inconsistent or compelling in this case. They require that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some*

meaningful review of the administrative proceeding." *Mendoza–Lopez*, 481 U.S. at 837–38, 107 S.Ct. at 2154 (emphasis in original). In *Estep*, a defendant sought to defend against a charge of willfully failing to submit to military induction on the ground that he had been improperly classified as available for military service by his local draft board. 327 U.S. at 116–17, 66 S.Ct. at 424–25. In *Mendoza–Lopez*, the issue was whether an alien prosecuted for illegal entry after deportation, in violation of 8 U.S.C. § 1326, may assert as a defense in the criminal proceeding the invalidity of the underlying deportation order. 481 U.S. at 830, 107 S.Ct. at 2150–51. Neither applies where, as here, the prior administrative proceeding does not involve the defendant's individual rights and is not an element of the criminal offense in the pending case.[11] *See Mendoza–Lopez*, 481 U.S. at 833, 107 S.Ct. at 2152 (question is whether validity of underlying deportation order may be challenged in prosecution in which prior deportation is element of crime), & n. 7 (noting that question had been left open in

The district court thought the legislative history revealed only that Congress "desired more than a prohibition of judicial review under the APA, though whether that prohibition extends to criminal cases is simply not discussed," and that Congressional silence "is not necessarily to be construed as a denial of the power of the federal courts to grant relief in the exercise of the general jurisdiction which Congress has conferred upon them." *Mandel*, 696 F.Supp. at 511, 512 (citing *Estep*, 327 U.S. 114, 120, 66 S.Ct. at 426–27).

The district court's analysis was made without reference to *Department of the Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988). While it is the rule that absent evidence of a clear and convincing Congressional intent to the contrary, there is a strong presumption in favor of judicial review, *see e.g., Abbott Laboratories v. Gardner*, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511–12, 18 L.Ed.2d 681 (1967), this "general proposition of administrative law ... runs aground when it encounters concerns of national security ... committed by law to the appropriate agency of the Executive Branch." *Egan*, 484 U.S. at 527, 108 S.Ct. at 823–24. Courts therefore should not intrude upon the authority of the executive in military and national security affairs, unless Congress has specifically expressed a contrary intention. *Id.*, 484 U.S. at 530, 108 S.Ct. at 825. *See also, e.g., Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983); *Schlesinger v. Councilman*, 420 U.S.

738, 757–58, 95 S.Ct. 1300, 1312–13, 43 L.Ed.2d 591 (1975). Because the maintenance of export controls under the EAA has a significant impact on national security, *see, e.g., Spawr II*, 864 F.2d at 1473, and because the available evidence suggests a Congressional intent to preclude, not authorize, judicial review, the general presumption of judicial review does not apply.

**11.** As put by Judge Greene in *Spawr Optical Research, Inc. v. Baldridge*, 649 F.Supp. 1366, 1372 n. 10 (D.D.C.1986):

Defendants' argument here is analogous to one by a defendant in a drug possession case that his conviction cannot stand because no specific showing has been made that the drug is a threat to society. In drawing up a list of controlled substances, Congress or local governments will already have determined that the drug in question, say cocaine, poses a threat to public safety or the general welfare. Congress may even have included such a determination in a statement of policy introducing the drug laws. See 21 U.S.C. § 801(2) ("The illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people."). However, a showing that the drug possessed by the individual defendant has a 'detrimental effect on the general welfare' does not thereby become an element of the offense.

case where dissent had argued that it was impermissible to use administrative determination as conclusive evidence of *fact* in subsequent criminal prosecution). Even were they otherwise on point, *Estep* and *Mendoza* are set apart for an additional, distinguishing reason: administrative decisions under the EAA implicate national security concerns and foreign policy considerations that are not part of the decision-making process in a deportation or classification hearing. Whereas a court is well suited to determine whether a prior deportation or classification hearing was fairly and properly conducted, it is ill suited to determine whether a particular oscilloscope has an impact on war and peace.

We therefore hold that the Secretary's decision to include particular items on the Commodity Control List is not subject to challenge as a defense to a charge of violating the Export Administration Act, such that discovery of the basis for his decision may be ordered for that reason alone.

## VI

■ The government contends that in any event the Secretary's decision to require export controls is an unreviewable political question. "Political questions" are controversies which revolve around policy choices and value determinations constitutionally committed to the Congress or the Executive Branch, and are not subject to judicial review. *Japan Whaling Ass'n v. American Cetacean Soc'y,* 478 U.S. 221, 230, 106 S.Ct. 2860, 2865–66, 92 L.Ed.2d 166 (1986). In *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), the Supreme Court identified six independent factors indicative of a political question: (1)

a textually demonstrable constitutional commitment of the issue to a coordinate political department; (2) a lack of judicially discoverable and manageable standards for resolving it; (3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; (4) the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; (5) an unusual need for unquestioning adherence to a political decision already made; or (6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question. *Id.* at 217, 82 S.Ct. at 710. Implicating any one of these factors renders a question "political" and thus nonjusticiable. *Armstrong v. United States,* 759 F.2d 1378, 1380 (9th Cir.1985).

The district court declined to decide if the political question doctrine applies. The Mandels argue that it correctly determined that judicial review limited to whether there was any basis in fact for the Secretary's decision raises no political question concerns.[12]

Although the basis in fact inquiry is the narrowest form of judicial review,[13] *Sanger v. Seamans,* 507 F.2d 814, 816 (9th Cir. 1974), it is nevertheless a review of the merits of the Secretary's decision. A "basis in fact consists of 'some proof'—something which may be less than substantial evidence." *Petrie v. United States,* 407 F.2d 267, 274 (9th Cir.1969). Even that level of review carries with it the possibility that the court might reverse the Secretary's determination in a particular case. *See United States ex rel. Checkman v. Laird,* 469 F.2d 773, 778–83 (2d Cir.1972).

---

**12.** They suggest that the limited review adopted by the district court is similar to that allowed in *Haire v. United States,* 869 F.2d 531 (9th Cir. 1989), and *Dart v. United States,* 848 F.2d 217 (D.C.Cir.1988). However, the review in each case was of administrative proceedings in which civil penalties were assessed, not of the Secretary's decision to place a commodity on the CCL. More important, neither case involved review of the merits of the Secretary's decision, *Haire,* 869 F.2d at 533; *see also Dart,* 848 F.2d at 231, but rather limited judicial review of agency action that on its face violates the EAA.

**13.** "The reviewing court does not weigh the evidence for itself or ask whether there is substantial evidence to support [the decision].... Rather, the court 'search[es] the record for some affirmative evidence' to support the authorities' overt or implicit finding.... Put another way, the reviewing court should look for 'some proof that is incompatible with the applicant's claims'" *Koh v. Secretary of the Air Force,* 719 F.2d 1384 (9th Cir.1983), *quoting Taylor v. Claytor,* 601 F.2d 1102 (9th Cir.1979) (citations omitted).

The EAA requires the Secretary to consider such things as whether the imposition of export controls would be detrimental to the foreign policy or national security interests of the United States, whether restrictions on a given commodity would fulfill declared international obligations of this country, and whether the export of a given commodity would make a significant contribution to the military potential of other countries. 50 U.S.C.App. §§ 2403(c), 2404(a)(1), (d)-(f). These are quintessentially matters of policy entrusted by the Constitution to the Congress and the President, for which there are no meaningful standards of judicial review.[14] *Spawr II*, 864 F.2d at 1473.

If a court were to review and reverse the Secretary's determination, it would call into question input from other agencies as well as Commerce. The EAA directs the Secretary of Defense to develop a list of militarily critical technologies for inclusion on the CCL, 50 U.S.C.App. § 2404(d), and provides for his concurrence in the Secretary of Commerce's decision. 50 U.S.C.App. § 2404(c)(2). The Secretary of State must also be consulted. 50 U.S.C.App. § 2404(k). Finally, the EAA requires the Secretary to negotiate with allies of the United States to arrive at a mutually acceptable list of articles subject to export controls. 50 U.S.C.App. § 2404(i).

■■■ For these reasons the Secretary's decision to place an item on the Commodity Control List is a political question not subject to review to determine whether he had a basis in fact. Accordingly it was error to allow discovery on that issue.

REVERSED and REMANDED for further proceedings not inconsistent with this opinion.

PREGERSON, Circuit Judge, concurring:

I concur in the result reached by the majority. I write separately because I believe the majority opinion cuts a path broader than necessary to decide this case.

We held in *Spawr II* that the Secretary's decision to place a commodity on the Commodity Control List is not subject to judicial review. *United States v. Spawr Optical Research, Inc.*, 864 F.2d at 1472, 1474. The discovery granted by the district judge in this case, therefore, was not appropriate. The Mandels contend that the due process principles of *United States v. Mendoza–Lopez*, 481 U.S. at 828, 107 S.Ct. at 2148–50, and *Estep v. United States*, 327 U.S. at 114, 66 S.Ct. at 423–24, preclude our following *Spawr II*. That argument is unavailing. As the majority opinion states, we may reconsider our precedent only when an *intervening* Supreme Court decision undermines it. *See Montana v. Johnson*, 738 F.2d 1074, 1077 (9th Cir.1984). *Spawr II* was decided after *Mendoza–Lopez* and *Estep*, and can only be overruled by an en banc panel. The majority opinion thus unnecessarily discusses the effect of *Mendoza–Lopez* and *Estep* on this case.

Further, because *Spawr II* holds, as a matter of statutory interpretation, that the Secretary of Commerce's decision to include particular items on the Commodity Control List is not subject to judicial review, there is no need to reach the government's political question argument.

It is true that the district judge based his decision to allow the discovery the Mandels requested in part on an analysis of *Mendoza–Lopez* and *Estep*. But the district judge did not have the benefit of our holding in *Spawr II* when he made his ruling. We do and are bound by *Spawr II*.

I would reverse based on *Spawr II* alone. Accordingly, I do not join in the majority opinion's discussion of *Mendoza–Lopez, Estep*, and the political question issue.

---

**14.** Two district courts have so held in well-reasoned opinions. *United States v. Moller–Butcher*, 560 F.Supp. 550 (D.Mass.1983) and *United States v. Helmy*, 712 F.Supp. 1423 (E.D.Cal. 1989).