**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

CORTRAYER ZONE,
        *Defendant-Appellant.*

No. 03-10361

D.C. No.
CR-02-00475-PMP/
LRL

OPINION

Appeal from the United States District Court
for the District of Nevada
Philip M. Pro, District Judge, Presiding

Argued and Submitted
April 13, 2004—San Francisco, California

Filed April 18, 2005

Before: J. Clifford Wallace, Alex Kozinski and
Sidney R. Thomas, Circuit Judges.

Per Curiam Opinion;
Concurrence by Judge Wallace

4329

**COUNSEL**

Jason F. Carr and Alexander Modaber, Assistant Federal Public Defenders, Las Vegas, Nevada, for the defendant-appellant.

Kathleen Bliss, Assistant United States Attorney, Organized Crime Strike Force, Las Vegas, Nevada, for the plaintiff-appellee.

## OPINION

PER CURIAM:

Cortrayer Zone appeals from the district court's order denying his motion to dismiss his federal criminal indictment. He argues that the instant federal prosecution violates his rights under the Double Jeopardy Clause because federal prosecutors orchestrated a previous state plea agreement in order to obtain a sworn admission for use in the federal proceedings. Because Zone has produced no evidence that "the state in bringing its prosecution was merely a tool of the federal authorities," *United States v. Figueroa-Soto*, 938 F.2d 1015, 1019 (9th Cir. 1991) (quoting *Bartkus v. Illinois*, 359 U.S. 121, 123 (1959)) (internal quotation marks omitted), we affirm the district court's denial of his motion to dismiss and deny his request to remand for an evidentiary hearing and further discovery.

## I

In early 2002, law enforcement officials in the Las Vegas area assembled a federally funded task force to address escalating gun violence. According to United States Attorney Daniel Bogden, the task force's ultimate objective was to "attack the violence of gun offenders" and "tak[e] them off the streets immediately." J.M. Kalil, *New Approach: Prosecutors Take Aim at Gun Crimes*, LAS VEGAS REV.-J., Mar. 8, 2002, at 1B, *available at* 2002 WL 6871941. Task force participants included representatives of the United States Attorney for the District of Nevada; Clark County deputy district attorneys; Bureau of Alcohol, Tobacco and Firearms (ATF) agents; and

local police department investigators. To promote cooperation and information-sharing between state and federal officials, the task force conducted weekly meetings to discuss and coordinate participants' activities. In each case where federal and county prosecutors both claimed jurisdiction over a gun-related offense, the task force would "make a strategic decision where to prosecute it." *Id.*

Around the time state and federal officials were forming the task force, Zone was involved in criminal activity that potentially fell within its purview. On December 21, 2001, Nevada police arrested Zone on charges associated with carrying a concealed firearm (a handgun). Zone retained counsel and engaged in plea negotiations with the prosecutors. On April 16, 2002, he pleaded guilty to a violation of Nev. Rev. Stat. § 202.350 (carrying a concealed weapon), a gross misdemeanor. The local court assessed a $500 fine and a $25 administrative fee. Thereafter, the handgun was released to the ATF for further testing. The ATF determined that Zone's palm print was on the weapon.

Several months after his state court plea, the federal government indicted Zone for a violation of 18 U.S.C. § 922(g)(1), which prohibits felons from possessing "any firearm or ammunition" in interstate commerce, a charge predicated on the same conduct underlying his prior state conviction. The federal charge carried a higher statutory penalty: a fine, up to ten years imprisonment, or both. *Id.* § 924(a)(2). Suspecting that federal prosecutors might have orchestrated the prior plea proceedings in order to secure an admission of guilt for use in federal court, Zone asked the United States Attorney to produce records from the task force's weekly meetings. Zone hoped that these records would establish federal prosecutors' collusion with, or domination of, their county counterparts in the task force. The federal prosecutors rejected Zone's discovery request, and the district court denied his subsequent motion to compel information and documents.

Zone then filed a motion to dismiss the indictment. The motion restated Zone's suspicion that his state conviction was a sham or a cover for the federal prosecution and asserted that the federal proceedings violated Zone's rights under the Double Jeopardy Clause. The district court denied the motion to dismiss and stayed Zone's federal proceedings pending the outcome of this interlocutory appeal.

## II

[1] We review de novo the district court's denial of Zone's motion to dismiss on double jeopardy grounds. *United States v. Price*, 314 F.3d 417, 420 (9th Cir. 2002). We will not exercise jurisdiction over Zone's interlocutory appeal from the denial of his motion to dismiss unless his double jeopardy claim is "colorable." *Id.* "A double jeopardy claim is colorable if it has 'some possible validity.' " *Id.* (quoting *United States v. Sarkisian*, 197 F.3d 966, 983 (9th Cir. 1999)). Few double jeopardy claims based on successive state and federal prosecutions are "colorable" under this definition because, as a general rule, "an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each" without offending the Double Jeopardy Clause. *United States v. Lanza*, 260 U.S. 377, 382 (1922); *see also Heath v. Alabama*, 474 U.S. 82, 89 (1985) ("[T]he [Supreme] Court has uniformly held that the States are separate sovereigns with respect to the Federal Government because each State's power to prosecute is derived from its own 'inherent sovereignty,' not from the Federal Government." (quoting *United States v. Wheeler*, 435 U.S. 313, 320 n.14 (1978))).

[2] *Lanza*'s separate-sovereigns rule has one important exception, however. In *Bartkus*, the Supreme Court suggested that the Double Jeopardy Clause might proscribe consecutive state and federal prosecutions in cases where federal authorities commandeer a state's prosecutorial machinery, converting the state prosecution into "a sham and a cover for a

federal prosecution, and thereby in essential fact another federal prosecution." 359 U.S. at 123-24. Although the Court explored this narrow exception in dicta, we have adopted the "*Bartkus* exception" as the controlling law of this circuit. *See, e.g.*, *Figueroa-Soto*, 938 F.2d at 1019; *United States v. Bernhardt*, 831 F.2d 181, 182-83 (9th Cir. 1987).

**[3]** Invoking *Bartkus*, Zone speculates that federal officials might have cajoled or prodded state prosecutors into concluding a plea bargain with Zone in order to facilitate a conviction in his subsequent federal trial. Even if Zone could prove this hypothesis true through testimonial or documentary evidence, he would not qualify for relief under the *Bartkus* exception. The Double Jeopardy Clause does not prevent federal prosecutors from encouraging their state counterparts to pursue plea bargains, nor does it prevent them from taking advantage of the evidentiary record developed in connection with a defendant's previous state conviction. *See, e.g.*, *United States v. Koon*, 34 F.3d 1416, 1439 (9th Cir. 1994) ("[T]he fact that evidence developed from the state trial was used in the federal trial does not create a double jeopardy problem."), *rev'd in part on other grounds*, 518 U.S. 81 (1996). "As *Bartkus* makes plain, there may be very close coordination in the prosecutions, in the employment of agents of one sovereign to help the other sovereign in its prosecution, and in the timing of the court proceedings so that the maximum assistance is mutually rendered by the sovereigns. . . . No constitutional barrier exists to this norm of cooperative effort." *Figueroa-Soto*, 938 F.2d at 1020. Instead, the Double Jeopardy Clause limits consecutive state and federal criminal proceedings only when federal prosecutors "so throughly dominate[ ] or manipulate[ ] the [state's] prosecutorial machinery . . . that the latter retains little or no volition in its own proceedings." *United States v. Guzman*, 85 F.3d 823, 827 (1st Cir. 1996); *see also Bernhardt*, 831 F.2d at 183 (holding "that sufficient independent federal involvement would save" state-dominated prosecutions in federal court from the *Bartkus* exception); *United States v. Liddy*, 542 F.2d 76, 79 (D.C. Cir. 1976) ("The bur-

den . . . of establishing that federal officials are controlling or manipulating the state processes is substantial; the [defendant] must demonstrate that the state officials had little or no independent volition in the state proceedings."). Thus, to the extent Zone's motion to dismiss alleges only collaboration between state and federal authorities, it fails to state a colorable double jeopardy claim.

**[4]** On the other hand, Zone's contention that his "State prosecution was a sham or a cover for the subsequent Federal prosecution" could be interpreted to mean that federal authorities so thoroughly dominated the task force that state prosecutors exercised no independent volition in the decision to negotiate a state plea bargain prior to bringing federal charges. Although we have never considered a defendant's allegation that the *first* of two prosecutions was a "sham" or "cover," there is no logical reason why the *Bartkus* exception would not apply under such circumstances. Therefore, reading Zone's allegations in the light most favorable to his claim, we hold that his double jeopardy claim is sufficiently "colorable" to furnish jurisdiction over his interlocutory appeal.

## III

We must decide next whether Zone, as the party moving for dismissal, has tendered sufficient evidence to establish a prima facie double jeopardy claim. *See Guzman*, 85 F.3d at 827 (holding that a defendant "must produce some evidence tending to prove that . . . one sovereign was a pawn of the other, with the result that the notion of two supposedly independent prosecutions is merely a sham"); *United States v. McKinney*, 53 F.3d 664, 676 (5th Cir. 1995) ("[T]he defendant has the burden of producing evidence to show a *prima facie* double jeopardy claim.").

**[5]** We affirm the district court's determination that Zone has not satisfied this evidentiary burden. Zone's only evidence consists of newspaper articles appended to his motion

to dismiss that report the task force's formation and describe its mission. These articles contain general information that at most suggests that federal and state prosecutors collaborate as equal, independent partners in the task force's weekly strategy sessions. They do not establish that federal prosecutors dominated or manipulated their state counterparts in Zone's specific instance, transforming his state plea agreement into a de facto federal conviction. Since Zone's double jeopardy claim rests on nothing more than speculation and conjecture, we conclude that the district court did not commit error when it denied his motion to dismiss.

## IV

[6] Zone petitions this court to remand his case to the district court with instructions to conduct an evidentiary hearing on his *Bartkus* claim. In past decisions, we have held that an evidentiary hearing may be necessary when the factual record does not support a district court's order granting a defendant's motion to dismiss on double jeopardy grounds. *See, e.g.*, *Bernhardt*, 831 F.2d at 183 (remanding a *Bartkus* claim to the district court with instructions to "consider whether [an evidentiary] hearing would aid in the factfinding process" after "[b]oth sides . . . requested [a] hearing to address the extent of federal involvement in" successive state and federal prosecutions). In this case, however, we deny Zone's request for remand and an evidentiary hearing because he has not presented any evidence of undue coercion or collusion by federal authorities, *see Koon*, 34 F.3d at 1439 (holding that at the very least a defendant "must make more than 'conclusory allegations' of collusion" to qualify for an evidentiary hearing (citation omitted)), and the government actively opposed his request for an evidentiary hearing on the double jeopardy claim in the district court.

## V

[7] Zone also asks that we reverse the district court's order denying discovery into the task force's confidential decision-

making process. Discovery decisions are generally not final judgments that may be appealed under 28 U.S.C. § 1291. *See Catlin v. United States*, 324 U.S. 229, 233 (1945) ("A 'final decision' generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."); *see also Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989). However, the Supreme Court has recognized an exception to the normal application of section 1291's finality requirement, known as the collateral order doctrine, that allows us to hear interlocutory appeals of orders that (1) "conclusively determine [a] disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) are "effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978); *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). The district court conclusively determined that Zone is not entitled to discovery, and its decision is collateral to the merits of Zone's criminal prosecution. The only question is whether the decision implicates a right that would be lost if review awaited final judgment.

**[8]** The collateral order doctrine is frequently applied where a district court denies a motion to dismiss on the basis of "an explicit statutory or constitutional guarantee that trial will not occur," *Midland Asphalt*, 489 U.S. at 801, because an appeal after trial would be too late to protect the right not to be tried. For instance, we have jurisdiction to review the district court's denial of Zone's motion to dismiss on double jeopardy grounds. *See* pages 4335-37 *supra*; *see also Helstoski v. Meanor*, 442 U.S. 500, 506-08 (1979) (allowing interlocutory appeal of motions to dismiss under the Speech or Debate Clause).

**[9]** Although we are dealing here with Zone's discovery request rather than his motion to dismiss, the two are clearly related: The purpose of the discovery request is to provide a basis for the motion to dismiss. Zone seeks information that,

he hopes, will establish his right, by virtue of the Double Jeopardy Clause, not to be tried. If we decline to consider Zone's discovery request until after trial and then reverse the district court's decision to deny discovery, whatever information Zone obtains would come too late; even if the discovered material established Zone's right not to be tried, that right would have been lost.

Our caselaw thus indicates that we should look to the right a defendant seeks to establish through discovery in order to decide whether we may consider an interlocutory appeal of the decision denying that discovery. In *United States v. Almany*, 872 F.2d 924 (9th Cir. 1989), the defendant had requested grand jury transcripts that could have established that the government had not "inform[ed] the grand jury of certain Lanham Act defenses." *Id.* at 925. But, we noted, only a "defect so fundamental that it causes the grand jury no longer to be a grand jury . . . gives rise to the constitutional right not to be tried." *Id.* at 926 (quoting *Midland Asphalt*, 489 U.S. at 802) (internal quotation marks omitted). Even if the transcripts proved exactly what the defendant wished to show, he would not thereby have established a constitutional right not to be tried, *see id.*, so he was not entitled to interlocutory review of the district court's decision to deny his request.

**[10]** Zone's discovery request differs fundamentally from the one in *Almany* because Zone seeks to establish his right not to be tried. Since this right would be lost if trial proceeds, and since the district court's denial of Zone's discovery request meets the other two requirements of the collateral order doctrine, we have jurisdiction to consider Zone's interlocutory appeal.\*

---

\*Contrary to Judge Wallace's suggestion, *see* Concur. op. at 4343, we are mindful of the Supreme Court's guidance that "the issue of appealability under § 1291 is to be determined for the entire category to which a claim belongs." *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994). We simply hold that interlocutory appeals are appropriate for a particular category of discovery requests: those discovery requests that seek information to establish a statutory or constitutional right not to be tried.

**[11]** However, "[t]o obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990). The district court did not abuse its discretion in denying Zone's discovery request because he did not make a preliminary showing of "inter-sovereign collusion," as opposed to mere "inter-sovereign cooperation." *See* pages 4335-37 *supra* (noting that defendant "has not presented any evidence of undue coercion or collusion by federal authorities").

## VI

**[12]** In an era when close collaboration between state and federal prosecutors has become "the conventional practice . . . throughout the country," *Bartkus*, 359 U.S. at 123, we reaffirm the settled rule that "[n]o constitutional barrier exists to this norm of cooperative effort." *Figueroa-Soto*, 938 F.2d at 1020. Defendants raising double jeopardy challenges to successive state and federal prosecutions bear "the burden of producing evidence to show a *prima facie* double jeopardy claim." *McKinney*, 53 F.3d at 676. As Zone has not satisfied this preliminary evidentiary burden, we affirm the district court's order denying his motion to dismiss and deny his request that we remand for an evidentiary hearing and further discovery.

**AFFIRMED.**

---

WALLACE, Senior Circuit Judge, concurring:

I agree that we have jurisdiction to review the district court's order denying Zone's motion to dismiss on double jeopardy grounds; that the district court did not err in denying that motion; and that Zone is not entitled to an evidentiary hearing on his double jeopardy claim. I write separately, however, to discuss the majority's analysis of whether we have

jurisdiction to review the district court's denial of Zone's discovery request. I would dismiss the appeal from the district court's order denying discovery for a lack of jurisdiction. I therefore concur in all but Part V of the opinion and concur in the result.

Pursuant to 28 U.S.C. § 1291, we "have jurisdiction of appeals from all final decisions of the district courts." In *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949), the Supreme Court established the "collateral order doctrine," which provides an exception to section 1291's requirement of finality. In order to ensure that the exception does not swallow the rule, we have often expressed a reluctance, if not outright unwillingness, to allow interlocutory review of discovery orders under the collateral order doctrine. *See, e.g.*, *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1490 (9th Cir. 1989) ("Discovery orders are not final appealable orders under 28 U.S.C. § 1291, and courts have refused interlocutory review of such orders under the collateral order doctrine"); *In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Litig.*, 821 F.2d 1422, 1425 (9th Cir. 1987) ("Although the collateral order rule has been applied in a variety of circumstances, courts have generally denied review of pretrial discovery orders"). Indeed, one of the very cases that the majority cites in support of its assertion that we have jurisdiction to review the order denying discovery, *United States v. Almany*, 872 F.2d 924 (9th Cir. 1989), states that "[a]n order denying a motion for discovery . . . is not an appealable collateral order." *Id.* at 926.

However, other cases have chipped away at section 1291's limitation on our jurisdiction by deciding, on a case-by-case basis, that a particular discovery order satisfies the requirements of the collateral order doctrine. *See, e.g.*, *Bittaker v. Woodford*, 331 F.3d 715, 717-18 (9th Cir. 2003) (en banc) (protective order precluding state from using privileged materials for any purpose other than litigating habeas petition alleging ineffective assistance), *cert. denied*, 540 U.S. 1013

(2003); *Osband v. Woodford*, 290 F.3d 1036, 1039-41 (9th Cir. 2002) (similar); *Wharton v. Calderon*, 127 F.3d 1201, 1203-04 (9th Cir. 1997) (protective order precluding warden from interviewing habeas petitioner's former counsel except at deposition in presence of current counsel); *United States v. Columbia Broad. Sys., Inc.*, 666 F.2d 364, 369-71 (9th Cir. 1982) (stating that "most discovery orders do not meet the requirements of the collateral order doctrine," but holding that an order denying nonparty witnesses' post-production motion for reimbursement of discovery costs satisfied *Cohen*).

In my view, we have gone astray in this latter group of cases. To say, as we sometimes have, that "most" discovery orders do not satisfy *Cohen* but nonetheless conclude that the particular order under review does, is to pay lip service to the fundamental limitations on our jurisdiction. As the Supreme Court has explained:

[W]e have . . . repeatedly stressed that the "narrow" exception [provided by the collateral order doctrine] should stay that way and never be allowed to swallow the general rule, that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated. We have accordingly described the conditions for collateral order appeal as stringent, and have warned that the issue of appealability under § 1291 is to be determined for the entire category to which a claim belongs, without regard to the chance that the litigation at hand might be speeded, or a "particular injustic[e]" averted, by a prompt appellate court decision.

*Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994) (citations omitted). Thus, rather than continue to apply a case-by-case approach, I would hold, as the better-reasoned of our decisions suggest, that "the entire category" of discovery orders do not qualify as collateral orders. Such a rule would obviate the majority position which leads to an unfortunate anomaly. The majority says we have jurisdiction

to review an order denying discovery whenever the discovery request "seek[s] information to establish a statutory or constitutional right not to be tried," *Ante* at 4340 n.\*, even though we "will [not] exercise jurisdiction over an interlocutory appeal of [the] denial of a motion to dismiss on double jeopardy grounds [unless] the double jeopardy claim is 'colorable.' " *United States v. Price*, 314 F.3d 417, 420 (9th Cir. 2002). Thus, a defendant who fails to allege a colorable double jeopardy claim is precluded from obtaining interlocutory review of an order denying his motion to dismiss, but has immediate access to the court of appeals to review an order denying his discovery request.

This is not to suggest that the majority necessarily misapplies our precedents in holding that the discovery order at issue here is an appealable collateral order. *Almany* held that an order denying discovery was not appealable only after concluding that the denial did *not* implicate the appellant's constitutional "right not to be tried." 872 F.2d at 926. *Almany* could therefore plausibly be read to suggest that a denial of discovery that *does* implicate the right not to be tried *would* be appealable under *Cohen*. However, I believe that this reading of *Almany*, like the reasoning of some of the other cases cited above, is not faithful to Congress's clear intent and the Supreme Court's teachings.

A holding that discovery orders do not satisfy the collateral order doctrine would not preclude all review of such orders before final judgment. We have held that "review of a discovery order through the exceptional remedy of mandamus may be appropriate in the proper circumstances." *Admiral Ins. Co.*, 881 F.2d at 1490. *See also City of Las Vegas v. Foley*, 747 F.2d 1294, 1297 (9th Cir. 1984) ("Mandamus review has been held to be appropriate for discovery matters which otherwise would be reviewable only on direct appeal after resolution on the merits"). The distinction between review by mandamus and review by appeal is important because "[t]he method of review will determine the standard of review. Mandamus is

available only when there has been a usurpation of judicial power or a clear abuse of discretion below." *Garamendi v. Allstate Ins. Co.*, 47 F.3d 350, 352 n.6 (9th Cir. 1995), *aff'd sub nom. Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). However, on appeal, "[a] district court's discovery rulings are reviewed for an abuse of discretion." *United States v. Rivera-Relle*, 333 F.3d 914, 918 (9th Cir. 2003). Because the standard of review employed in mandamus is more generous to district courts, a holding that all discovery orders may be reviewed only by mandamus would help ensure that trials progress smoothly towards final judgment without undue appellate interference, while still maintaining an avenue of review for the most egregious district court errors.

Moreover, although Zone did not seek a writ of mandamus, "[w]e have the discretion to treat an appeal as a petition for writ of mandamus when appropriate," *Lee v. City of Beaumont*, 12 F.3d 933, 936 (9th Cir. 1993), and we have occasionally exercised that discretion in "appeals that fail to meet the strict requirements of the 'collateral order' doctrine." *Executive Software N. Am., Inc. v. United States Dist. Court*, 24 F.3d 1545, 1550 (9th Cir. 1994). Indeed, we may even construe an appeal as a petition for writ of mandamus sua sponte. *See Reynaga v. Cammisa*, 971 F.2d 414, 417, 418 (9th Cir. 1992); *In re Allen*, 896 F.2d 416, 419 (9th Cir. 1990) (per curiam), *citing Unified Sewerage Agency v. Jelco, Inc.*, 646 F.2d 1339, 1343 (9th Cir. 1981). "Whether we will do so in a particular case depends upon whether the order qualifies for extraordinary relief under the guidelines set forth in *Bauman v. United States Dist. Court*, 557 F.2d 650 (9th Cir. 1977)." *Unified Sewerage Agency*, 646 F.2d at 1343. Those guidelines are:X(1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. . . . (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order

raises new and important problems, or issues of law of first impression.

*Bauman*, 557 F.2d at 654-55. If a consideration of these factors suggests mandamus would be unjustified, we will "decline to construe the appeal as a writ of mandamus." *In re Nat'l Mortgage Equity Corp. Mortgage Pool Certificates Litig.*, 821 F.2d at 1425.

Consequently, rather than creating yet another exception to section 1291 for discovery orders that implicate a "right not to be tried," I would ask whether Zone would be entitled to a writ of mandamus directing the district court to grant Zone's discovery request. Among the five *Bauman* considerations, "it is clear that the third factor, the existence of clear error as a matter of law, is dispositive. Accordingly, [I] first examine whether the district court clearly erred." *Executive Software N. Am., Inc.*, 24 F.3d at 1551 (citations omitted).

We have not previously decided what showing a defendant must make to obtain discovery in aid of a double jeopardy claim based on the "sham" prosecution exception established in *Bartkus v. Illinois*, 359 U.S. 121 (1959). The majority concludes that a defendant need only make the showing required by Federal Rule of Criminal Procedure 16, i.e., a "prima facie showing of materiality," *see Ante* at 4341, *quoting United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990), but the majority's conclusion is doubtful. *See United States v. Rashed*, 234 F.3d 1280, 1285 (D.C. Cir. 2000) ("Because [a sham prosecution] defense . . . relates not to refutation of the government's case in chief but to establishment of an independent constitutional bar to the prosecution, Rule 16(a)(1)(C) of the Fed. R. Crim. P. is inapplicable"). In *Rashed*, the D.C. Circuit concluded that a defendant seeking discovery in aid of a "sham" prosecution claim, like a defendant seeking information to prove a selective-prosecution claim, must "adduce 'some evidence tending to show the essential elements of' the defense, not just evidence 'material'

to that defense as required by Rule 16." *Id.*, *quoting United States v. Armstrong*, 517 U.S. 456, 462, 470 (1996). The Seventh Circuit has also concluded that a defendant seeking discovery on a sham prosecution claim must make a showing similar to that required in the selective-prosecution context. *See United States v. Heidecke*, 900 F.2d 1155, 1159, 1160 (7th Cir. 1990) (requiring defendant to make a "colorable showing" of sham prosecution).

I need not definitively decide what showing Zone had to make to obtain discovery, however. Zone would not be entitled to mandamus unless he could demonstrate "clear error as a matter of law," and the district court did not commit such error even if the relatively lenient Rule 16 standard applied to Zone's discovery request. "Because this case clearly fails the test for issuing a writ of mandamus set forth in [*Bauman*], [I would] decline to treat the appeal as an application for mandamus." *Lee*, 12 F.3d at 936. And, "[b]ecause [I] decline to treat the appeal as a petition, [I conclude that] we lack mandamus jurisdiction required to review the district court's [discovery] order." *Id.* at 938. I would therefore dismiss the appeal from the order denying discovery for a lack of jurisdiction.