**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JOSHUA LUCAS,
*Defendant-Appellant.*

No. 15-10103

D.C. No.
3:14-cr-00197-EMC-1

OPINION

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted March 16, 2016
San Francisco, California

Filed November 8, 2016

Before: M. Margaret McKeown, Kim McLane Wardlaw,
and Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

## SUMMARY[*]

### Criminal Law

The panel affirmed a conviction for being a felon in possession of a firearm and ammunition in a case in which the defendant, who was previously convicted in California state court for the same conduct, moved to compel information he contends will support a motion to dismiss the federal indictment under the Double Jeopardy Clause.

The panel held that the district court did not err in denying the defendant's request for that information because the defendant failed to make the requisite showing of materiality under Fed. R. Crim. P. 16 and failed to adequately challenge the government's representation that it does not have any *Brady* material.

### COUNSEL

Daniel Blank (argued), Assistant Federal Public Defender; Carmen A. Smarandoiu, Research and Writing Attorney; Steven G. Kalar, Federal Public Defender; Office of the Federal Public Defender, San Francisco, California; for Defendant-Appellant.

Anne M. Voigts (argued), Assistant United States Attorney; Barbara J. Valliere, Chief, Appellate Division; Brian J. Stretch, Acting United States Attorney; United States

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Attorney's Office, San Francisco, California; for Plaintiff-Appellee.

## OPINION

TALLMAN, Circuit Judge:

Joshua Lucas appeals his federal conviction for being a felon in possession of a firearm and ammunition after his earlier California conviction for the same conduct. His appeal turns on a discovery issue: whether the district court erred by denying his motion to compel information he contends will support a motion to dismiss the federal indictment under the Double Jeopardy Clause of the United States Constitution. *See Petite v. United States*, 361 U.S. 529, 530–31 (1960); *Abbate v. United States*, 359 U.S. 187, 189–96 (1959). Because Lucas failed to either make the requisite showing of materiality under Federal Rule of Criminal Procedure 16 or adequately challenge the government's representation that it does not have any *Brady* material, we affirm.

## I

On October 15, 2013, two Bay Area Rapid Transit ("BART") police officers saw Lucas and two others evade the fare to ride a BART train at the Powell Street Station in San Francisco, California. One of the officers approached Lucas, who admitted he did not have a BART ticket. When the officer turned to speak to the second officer, Lucas started to run. The officers chased after him and warned him that he would be tased if he did not stop. Lucas kept running. One of the officers then activated his taser, striking Lucas in the back. As Lucas fell to the ground, a Taurus PT738 .380-caliber handgun fell out of his shorts. The pistol, the officers

discovered, was loaded with four rounds of .380-caliber Hornady ammunition[1] and two rounds of 7.65-millimeter ammunition. During the incidental search of Lucas following his arrest, officers found a second handgun—a stolen Colt firearm—loaded with one round of .380-caliber Hornady ammunition, five rounds of .32-caliber PAC ammunition, and one round of 7.65-millimeter ammunition. Subsequent investigation established that both firearms and the ammunition had previously traveled in interstate commerce.

California state authorities charged Lucas by information with being a felon in possession of a firearm in violation of California Penal Code section 29800. Lucas pleaded guilty to this charge on October 31, 2013. On December 9, 2013, he was given a two-year suspended sentence, one year in county jail, and three years of probation. Because he had earned good-time credits and credit for time served, Lucas was set for release from state custody on April 15, 2014.

On April 3, 2014, a federal grand jury returned a one-count indictment against Lucas, charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The federal charge was based on the same October 15, 2013 BART incident for which Lucas had been prosecuted and punished in state court. On April 14, 2014,

---

[1] The government describes this ammunition as "hollow point," a type of ammunition that expands inside the target's tissue to "increase its effective diameter" and "greatly increase[ ]" the "wounding performance" of a bullet. Tom Warlow, *Firearms, the Law, and Forensic Ballistics* 212 (3d ed. 2012), https://books.google.com/books/about/Firearms_the_Law_and_Forensic_Ballistics.html?id=1jHNBQA AQBAJ (book sample).

the district court issued a writ of habeas corpus *ad prosequendum* directing state authorities to bring Lucas before the district court to face his federal criminal charge. On April 16, 2014, Lucas completed his state sentence and was taken directly from state custody to the district court for an initial appearance on his federal charge.[2]

## II

After Lucas was federally charged, his defense counsel asked the federal prosecutor whether she had obtained a waiver of the government's *Petite* policy, which generally precludes a successive federal prosecution after a state prosecution based on the same conduct unless (1) the case involves a substantial federal interest; (2) the prior prosecution left that substantial federal interest unvindicated; (3) the defendant's conduct constitutes a criminal offense and the government believes sufficient evidence exists to sustain a conviction; and (4) the subsequent prosecution has been approved by the appropriate Assistant Attorney General. *See* U.S. Attorneys' Manual § 9-2.031 (1997) ("*Petite* policy").[3] The prosecutor replied that she had obtained a *Petite* waiver and that the substantial federal interest was two-fold:  the incident had

---

[2] Although the federal prosecutor at Lucas's initial appearance represented that Lucas had three months remaining on his state sentence, she later confirmed and agreed with defense counsel that Lucas had served his entire state sentence.

[3] The *Petite* policy is a set of internal guidelines promulgated by the Department of Justice "for the exercise of discretion by appropriate officers of the Department of Justice in determining whether to bring a federal prosecution based on substantially the same act(s) or transactions involved in a prior state or federal proceeding. *See Rinaldi v. United States*, 434 U.S. 22, 27 (1977); *Petite v. United States*, 361 U.S. 529 (1960)."  U.S. Attorneys' Manual § 9-2.031.

taken place in a BART station, and Lucas had not received an adequate state sentence.

Lucas's defense counsel later sent the prosecutor a discovery request, seeking information that he hoped would demonstrate that federal and state authorities had colluded in prosecuting Lucas in violation of the Double Jeopardy Clause of the Fifth Amendment. Citing *Brady v. Maryland*, 373 U.S. 83 (1963), defense counsel specifically requested:

> any and all information regarding the coordination of firearm investigations and prosecutions between the federal government here in the Northern District of California and state law enforcement authorities in the City and County of San Francisco, California, for the past 10 years and particularly in the instant case of Joshua Lucas.

The prosecutor refused to provide the information, asserting that neither Federal Rule of Criminal Procedure 16 nor *Brady* authorized counsel's request. She further contended that Rule 16 expressly barred the disclosure of internal memoranda and reports between the various authorities.

Lucas then moved to compel the production of five categories of evidence:

- Any formal policy or memorandum of understanding between the U.S. Attorney's Office and the San Francisco District Attorney's Office, Sheriff's Department or Police Department regarding coordination in the investigation or prosecution of firearm

cases, including the "Trigger Lock" program, that may have played a role in the successive charging of Mr. Lucas in this case. . . .

- All letters, emails, memoranda or other existing documentation regarding any informal agreement, understanding or practice of coordination between the U.S. Attorney's Office and the San Francisco District Attorney's Office, Sheriff's Department or Police Department in the investigation or prosecution of firearm cases that may have played a role in the successive charging of Mr. Lucas in this case. . . .

- Any state/federal cross-designation[4] of law enforcement officials involved in firearms cases in San Francisco, that may have played a role in the successive charging of Mr. Lucas in this case. . . .

- All letters, emails, memoranda or other existing documentation showing the point at which federal authorities became aware of the state prosecution against Mr. Lucas and what communications

---

[4] "Cross-designation" refers to the practice of swearing in a state law enforcement officer as a special deputy United States marshal to assist in joint state/federal task forces. It also includes administering a similar oath to federal officers assisting in state prosecutions.

occurred between federal and state authorities, when they occurred and who initiated them. . . .

- Any record of the claimed *Petite* waiver in Mr. Lucas's case, including when it was obtained.

## A

The district court referred the motion to United States Magistrate Judge Laurel Beeler, who denied it after a hearing. In her written order, Judge Beeler concluded that Lucas had failed to make a preliminary showing of inter-sovereign collusion to obtain discovery under Federal Rule of Criminal Procedure 16, as required by *United States v. Zone*, 403 F.3d 1101 (9th Cir. 2005).[5] Judge Beeler also found that the first three categories of evidence Lucas sought would establish only cooperation and could not establish collusion. She further rejected Lucas's argument that he was entitled to the requested evidence under *Brady* and noted in her written order that the government had represented that no *Brady* material existed. Lucas timely objected to the magistrate judge's ruling.

---

[5] Prior to issuing her ruling, the magistrate judge reviewed the following discovery produced by the government: (1) a record of proceedings in state court; (2) the BART police reports, which identify the transit agency police officers involved in the investigation; (3) witness statements; (4) the indictment in the federal case; (5) Lucas's criminal history; and (6) the firearm analysis showing that the firearms recovered from Lucas had an interstate commerce nexus.

**B**

District Judge Edward Chen then held a hearing on Lucas's objections. At the hearing, Lucas's counsel acknowledged that he had to make "some kind of threshold showing" to obtain the requested discovery. He contended, however, that he had made the required showing. His proffer included a 2005 news article on federal "intervention" into state firearm prosecutions, which described San Francisco's initiative to lower gun violence by referring convicted felons who were caught with guns to the U.S. Attorney's Office for prosecution under federal "Trigger Lock" laws that provided for extended sentences. *See* Jaxon Van Derbeken, *'Trigger Lock' Law Helps Cut Gang-Related Killings in Half*, SFGATE (July 21, 2005, 4:00 AM) ("*Trigger Lock*"), http://www.sfgate.com/bayarea/article/SAN-FRANCISCO-Trigger-Lock-law-helps-cut-2621421.php.

Lucas also presented an affidavit attesting to the unique circumstances of his case and highlighting the fact that he was taken from state custody directly to federal court upon completing his state sentence. The prosecutor represented at the hearing that no state district attorney or law enforcement officer had been cross-designated in this matter. This representation was responsive to Lucas's request for information about whether officers involved in the federal and state prosecutions were cross-designated. The prosecutor reported at the hearing that the case agent in Lucas's federal case was an FBI agent.

Judge Chen overruled Lucas's objections at the hearing and later in a written order, concluding that Lucas had failed to make a preliminary showing of inter-sovereign collusion under Rule 16 as required under *Zone*. The district court rejected Lucas's claim that he was entitled to discovery under *Brady*, finding that Lucas had not shown a "substantial

basis for claiming materiality exists" to justify his discovery requests under *Brady*. The court also found that Lucas was not entitled to an *in camera* review of the government's files. The district court relied upon the government's representation that no *Brady* material regarding inter-sovereign collusion existed and the government's promise that such evidence would be produced if it were discovered.

To perfect the discovery issue for appeal, Lucas filed a motion to dismiss the indictment under the Double Jeopardy Clause. In his motion, Lucas conceded that he could not meet his burden to obtain relief without the requested discovery that the district court ostensibly denied him. The district court denied Lucas's motion to dismiss.

On December 17, 2014, Lucas was convicted of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) following a stipulated-testimony bench trial that preserved Lucas's right to appeal the district court's discovery ruling. On March 4, 2015, he was sentenced to twenty-two months' imprisonment and three years' supervised release. Lucas filed a timely appeal of his judgment and sentence. On January 26, 2016, Lucas was released from federal custody. *See* Fed. Bureau of Prisons, Inmate Locator, https://www.bop.gov/inmateloc/ (results for "Joshua Lucas" or BOP Register Number 19687-111) (last visited Oct. 19, 2016); *see also United States v. Basher*, 629 F.3d 1161, 1165 & n.2 (9th Cir. 2011) (taking judicial notice of publicly-available information from the BOP Inmate Locator).

## III

We have jurisdiction to review the order denying Lucas's discovery requests under 18 U.S.C. § 1291 because a final

judgment has issued.  *See United States v. Doe*, 705 F.3d 1134, 1149–50 (9th Cir. 2013).  We review alleged *Brady* violations de novo.  *Id.*  Lucas, however, does not present a standard *Brady* claim, which would require him to show that he was prejudiced by the government's willful or inadvertent suppression of favorable evidence.  *Id.* at 1152; *see also Strickler v. Greene*, 527 U.S. 263, 281 (1999) ("[S]trictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.").  Here, Lucas cannot point to any existing favorable evidence to support his speculation.  Instead, he asserts that he is entitled to more information to prove his suspicions under *Brady* or, in the alternative, under Federal Rule of Criminal Procedure 16.[6]  Lucas requests, however, that we remand to the district court to conduct further review to confirm that the government has discharged its *Brady* obligations.

Lucas's appeal thus presents questions about a ruling on discovery, which we review for an abuse of discretion. *United States v. Alvarez*, 358 F.3d 1194, 1210 (9th Cir. 2004) ("We review discovery questions, including alleged *Brady* and Jencks Act rulings, for abuse of discretion."); *see also United States v. Michaels*, 796 F.2d 1112, 1115 (9th Cir. 1986) (reviewing denial of request for discovery under *Brady* for abuse of discretion).  "To find an abuse of discretion, we must 'have a definite and firm conviction that

---

[6] "Although we are dealing here with [Lucas's] discovery request rather than his motion to dismiss, the two are clearly related:  The purpose of the discovery request is to [find evidence to] provide a basis for the motion to dismiss.  [Lucas] seeks information that, he hopes, will establish his right, by virtue of the Double Jeopardy Clause, not to be tried."  *Zone*, 403 F.3d at 1106.

the district court committed a clear error of judgment.'" *Doe*, 705 F.3d at 1150 (citation omitted).  We cannot say this standard is met on the record before us.

## IV

The Double Jeopardy Clause provides that no person shall be "subject for the same offence to be twice put in jeopardy of life and limb."  U.S. Const. amend. V.  This clause does not prohibit successive prosecutions by separate sovereigns—such as the federal government and the State of California—arising out of the same acts:

> "Every citizen of the United States is also a citizen of a State or territory.  He may be said to owe allegiance to two sovereigns, and may be liable to punishment for an infraction of the laws of either.  The same act may be an offence or transgression of the laws of both."

*Bartkus v. Illinois*, 359 U.S. 121, 131 (1959) (quoting *Moore v. Illinois*, 55 U.S. 13, 20 (1852)).  There is, however, a narrow exception to this dual-sovereign doctrine.

In *Bartkus*, the Supreme Court warned that the Double Jeopardy Clause might proscribe consecutive federal and state prosecutions when a later state prosecution is "a sham and a cover for a federal prosecution, and thereby in essential fact another federal prosecution."  *Id.* at 124.  We have adopted the *Bartkus* exception and found that, while cooperation between prosecuting sovereigns does not implicate the Double Jeopardy Clause, "collusion between federal and state authorities could bar the second prosecution."  *United States v. Bernhardt*, 831 F.2d 181, 182 (9th Cir. 1987); *see also Zone*, 403 F.3d at 1104.

In short: Cooperation is constitutional; collusion is not. Impermissible collusion may be found when the prosecutors of one sovereign "so thoroughly dominate[ ] or manipulate[ ]" the prosecutorial machinery of the other sovereign "that the latter retains little or no volition in its own proceedings." *Zone*, 403 F.3d at 1105 (alterations in original) (quoting *United States v. Guzman*, 85 F.3d 823, 827 (1st Cir. 1996)). Such collusion may occur when a second prosecution "is not pursued to vindicate the separate interests of the second sovereign, but is merely pursued as a sham on behalf of the sovereign first to prosecute." *United States v. Guy*, 903 F.2d 1240, 1242 (9th Cir. 1990).

We have recognized that, under *Bartkus*, "it is extremely difficult and highly unusual" for a defendant to show that a prosecution by one government was a "tool, a sham or a cover for the other government." *United States v. Figueroa-Soto*, 938 F.2d 1015, 1019 (9th Cir. 1991). Indeed, in *Figueroa-Soto*, we found that the *Bartkus* exception did not apply when: (1) the state prosecuted the defendant at the request of federal authorities; (2) federal agents assisted with the state prosecution, sitting at the prosecutor's table at trial and testifying as witnesses; (3) the federal authorities provided evidence against the defendant for use during the state trial; (4) the federal sentencing hearing of a key witness was delayed until after the witness testified in the state trial against the defendant; (5) a federal forfeiture proceeding was delayed so the state prosecution would not be adversely affected; (6) federal agents contacted the state's witnesses before trial; and (7) the state prosecutor was cross-designated as a special assistant U.S. attorney to prosecute the defendant in federal court and was paid by the state for his role in the federal prosecution. *Id.* at 1018–19. We noted that *Bartkus* permits "very close coordination in the prosecutions, in the employment of agents of one sovereign

to help the other sovereign in its prosecution, and in the timing of the court proceedings so that the maximum assistance is mutually rendered by the sovereigns." *Id.* at 1020.

Defendants in other cases have faced similar difficulty in seeking remand for an evidentiary hearing on their double jeopardy defense. In *United States v. Koon*, for example, a defendant's "conclusory allegations" of collusion were insufficient to obtain an evidentiary hearing despite evidence that:

> (1) the federal investigation began when the crime occurred and remained active during the state investigation and prosecution; (2) federal and state authorities cooperated with each other, and the state delivered evidence and investigative reports to federal authorities after the state prosecution; (3) witnesses who testified in the federal trial were interviewed by the federal authorities soon after the incident; and (4) [a] videotape [recording of testimony in the state trial] was admitted into evidence in the federal trial.

34 F.3d 1416, 1439 (9th Cir. 1994), *rev'd in part on other grounds,* 518 U.S. 81 (1996). We held that such evidence "at most show[s] cooperation between federal and state authorities" and does not justify remand for an evidentiary hearing. *Id.*

## A

Lucas contends that, to the extent it applies, Federal Rule of Criminal Procedure 16 authorizes his requests for discovery regarding the degree to which federal and state

authorities cooperated in his case.  Subject to the exemptions described in Rule 16(a)(2), Rule 16(a)(1)(E) requires that, upon a defendant's request, the government must "disclose any documents or other objects within its possession, custody or control" that are "material to preparing the defense."  *United States v. Hernandez-Meza*, 720 F.3d 760, 768 (9th Cir. 2013) (quoting Fed. R. Crim. P. 16(a)(1)(E)). "[T]o obtain discovery under Rule 16, a defendant must make a prima facie showing of materiality."  *Zone*, 403 F.3d at 1107 (quoting *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir. 1990)).  This "low threshold" is satisfied if the information requested would have "helped" Lucas prepare a defense.  *Hernandez-Meza*, 720 F.3d at 768. "Neither a general description of the information sought nor conclusory allegations of materiality suffice; a defendant must present facts which would tend to show that the [g]overnment is in possession of information helpful to the defense."  *Mandel*, 914 F.2d at 1219.  Lucas's assertion that he met this threshold for materiality under Rule 16 is foreclosed by *Zone*.

In *Zone*, we applied Rule 16 to facts nearly identical to those in Lucas's case and found that the district court did not abuse its discretion in denying Zone's request for discovery to develop his double jeopardy defense.  403 F.3d at 1107.[7] Similar to the facts here, after Zone pleaded guilty to a firearm charge in state court, he was indicted in federal court for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  *Id.* at 1103.  Like Lucas, Zone's

---

[7] We reject the government's argument that Lucas waived any reliance on Rule 16 in his discovery efforts.  The district court applied *Zone* and Rule 16 to Lucas's discovery requests.  Lucas contends on appeal that, if Rule 16 does apply, he has met the required showing of materiality.  Therefore, the Rule 16 argument is properly before us.

federal charge was based on the same conduct as his state charge. *Id.* Suspecting that federal prosecutors had sought to secure a guilty plea in state court to use in the federal case, Zone asked for discovery to develop a double jeopardy defense. *Id.* at 1103–06. Specifically, Zone requested records from the weekly meetings of a federally-funded task force comprising the U.S. Attorney's Office, federal agents, county deputy district attorneys, and local police department investigators. *Id.* at 1103. The task force was formed to address gun violence by "promot[ing] cooperation and information-sharing" and "discuss[ing] and coordinat[ing] participants' activities" for gun-related offenses. *Id.*

The district court denied Zone's discovery request and subsequently denied Zone's motion to dismiss after concluding that he had not established a prima facie double jeopardy claim. *See id.* at 1105. In support of his motion to dismiss, Zone had proffered newspaper articles about the task force. *Id.* We held that Zone's proffered articles contained "general information that at most suggest[ed] that federal and state prosecutors collaborate[d] as equal, independent partners in the task force's weekly strategy sessions." *Id.* We further held that Zone failed to "make a prima facie showing of materiality" under Rule 16 because he did not make "a preliminary showing of 'inter-sovereign collusion,' as opposed to mere 'inter-sovereign cooperation.'" *Id.* at 1107 (quoting *Mandel*, 914 F.2d at 1219). We therefore upheld the district court's denial of Zone's discovery request and motion to dismiss and denied Zone's "request that we remand for an evidentiary hearing and further discovery." *Id.*

Here, the district court properly found that *Zone* is indistinguishable from Lucas's case and that Lucas failed to make the threshold showing of materiality. Lucas's

arguments to the contrary are unpersuasive. The *Trigger Lock* article that Lucas presented to the district court, like the news articles in *Zone*, merely describes the cooperation between federal and state authorities in attempting to reduce gun violence in San Francisco.[8] Lucas's defense counsel even acknowledged to the district court that the cooperation described in the article "seems benign and seems just cooperative." *See Trigger Lock*, *supra* at 9 ("The number of killings in San Francisco attributed to gangs . . . has dropped by more than 50 percent so far this year from 2004, thanks in part to intervention by federal law enforcement . . . to identify the city's most violent predators and subject them to federal prosecution . . . .").

In addition to the *Trigger Lock* article, Lucas's proffer included: (1) an affidavit from his defense counsel stating that it was exceedingly rare for a firearm case to be charged federally after an individual had completed a state court

---

[8] Neither the appellate excerpts of record nor Lucas's motions before the district court include the *Trigger Lock* article upon which Lucas relies. *See* Fed. R. App. P. 10(a) (stating that the record on appeal includes original papers and exhibits filed in the district court, the transcript of proceedings, and a certified copy of the district court's docket entries). At the hearing on Lucas's motion to compel, however, the district judge asked to see a copy of the *Trigger Lock* article, noting that it had not been attached to Lucas's motion to compel. Lucas's defense counsel then gave a copy of the article to the court and discussed its contents with the court. Both the district court's order denying the motion to compel and the government's brief on appeal provide the website address for the article. The *Trigger Lock* article is thus part of the record and we may consider it here. *See Townsend v. Columbia Operations*, 667 F.2d 844, 849 (9th Cir. 1982) (holding that documents were properly part of the appellate record when "they were submitted at the request of the district judge, were physically in the courtroom at the argument, were referred to and relied on by both sides in that argument, and were the basis of the opinion dictated by the court at the end of the argument").

sentence for the same conduct; (2) an argument that the "weak" federal interest in this case—the incident's occurrence at a mass transit station—demonstrated that the federal prosecution sought to vindicate state, rather than federal, interests in violation of the *Petite* policy; and (3) a claim that the federal prosecution's "perfect timing" with the end of Lucas's state sentence evidenced that federal and state authorities engaged in more than mere cooperation.

We hold that the district court did not abuse its discretion in finding that Lucas's proffer failed to meet the threshold for materiality under Rule 16. As the district court noted, the prosecutor represented that an informal poll of federal prosecutors in her office revealed that, in the previous five years, five federal cases like Lucas's were prosecuted after the defendant had completed a state sentence for the same conduct. Lucas contends that this informal poll actually supports his argument that his prosecution was unusual. But an unusual prosecution is not enough to meet the threshold for materiality under Rule 16.

Lucas's claim of collusion based on the "weakness" of the federal interest in this case and the inadequacy of his state sentence is similarly unavailing. As Lucas acknowledges, the *Petite* policy does not confer substantive rights upon him. *See United States v. Snell*, 592 F.2d 1083, 1087 (9th Cir. 1979). Thus, while he may quarrel with the strength of the federal interest asserted in this case, our review does not extend to revisiting the wisdom of the internal prosecutorial decisions made by the Department of Justice. It is perfectly sensible that federal authorities sought to prosecute Lucas after his comparatively light state sentence for possessing a firearm as a convicted felon. Their decision to do so is not emblematic of any undue influence by state authorities.

The allegedly "perfect timing" of the federal prosecution also fails to establish the threshold materiality showing under Rule 16.  Lucas argues on appeal that, because of California's complicated scheme for awarding good-time credits, release dates for state inmates are difficult to predict. According to Lucas, the fact that he was transferred from state custody directly to federal court is "suspicious[ ]" and "indicates an unusually close relationship between the state and federal authorities."  We find nothing unusual about the federal prosecutor's petition for a writ of habeas corpus *ad prosequendum* and the district court's issuance of that writ just prior to Lucas's release from state custody. Additionally, at the time, the federal prosecutor believed that Lucas had three months remaining on his state sentence.  Her mistaken belief suggests that federal and state authorities were not operating as one collusive machine, but permissively communicating—and even miscommunicating —about Lucas's release date.

We conclude on this record that, under *Zone* and the high evidentiary standard in double jeopardy claims, the district court did not abuse its discretion in ruling that Lucas failed to make a sufficient showing of materiality under Rule 16.

## B

Seeking to avoid Rule 16's materiality requirement, Lucas argues that he is not required to make a preliminary showing of materiality because he brought his discovery requests under *Brady*.  However, Lucas has yet to identify any *Brady* material that supports his claim.

## 1

Under *Brady*, the government must disclose information favorable to the accused that "is material either to guilt or to

punishment." 373 U.S. at 87. Evidence is material for *Brady* purposes if a "reasonable probability" exists that the result of a proceeding would have been different had the government disclosed the information to the defense. *United States v. Bagley*, 473 U.S. 667, 682 (1985). A reasonable probability is one that is "sufficient to undermine confidence in the outcome" of either the defendant's guilty plea or trial. *Id.*; *see Smith v. Baldwin*, 510 F.3d 1127, 1148 (9th Cir. 2007) (en banc) (citing *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995)). "The government has a duty to disclose *Brady* material even in the absence of a request by the defense." *United States v. Blanco*, 392 F.3d 382, 387 (9th Cir. 2004).

Here, the government affirmatively represented that it did not possess evidence of inter-sovereign collusion. Lucas contends that this "conclusory representation" did not discharge the government's obligations under *Brady* because the government must either produce information responsive to his discovery requests or submit whatever it possesses to the district court for an *in camera* review to confirm that no such evidence exists. Lucas's argument, however, is flawed.

It is the government, not the defendant or the trial court, that decides *prospectively* what information, if any, is material and must be disclosed under *Brady*. While we have encouraged the government to submit close questions regarding materiality to the court for *in camera* review, the government is not required to do so. *See Milke v. Ryan*, 711 F.3d 998, 1016 (9th Cir. 2013). And, as the Supreme Court has explained, *Brady* does not permit a defendant to sift through information held by the government to determine materiality:

A defendant's right to discover exculpatory evidence does not include the unsupervised authority to search through the [government's] files. Although the eye of an advocate may be helpful to a defendant in ferreting out information, this Court has never held . . . that a defendant alone may make the determination as to the materiality of the information. Settled practice is to the contrary. In the typical case where a defendant makes only a general request for exculpatory material under *Brady*, it is the State that decides which information must be disclosed. . . . Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance.

*Pennsylvania v. Ritchie*, 480 U.S. 39, 59–60 (1987) (footnote and citations omitted); *see also Weatherford v. Bursey*, 429 U.S. 545, 559 (1977) ("There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one.").

"Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutor's decision on disclosure is final." *Ritchie*, 480 U.S. at 60 (footnote omitted). To challenge the government's representation that it lacks *Brady* information, Lucas must either make a showing of materiality under Rule 16 or otherwise demonstrate that the government improperly withheld favorable evidence. *See, e.g.*, *id.* at 58 n.15 ("[Defendant], of course, may not require the trial court to search through [a statutorily-protected child

abuse] file without first establishing a basis for his claim that it contains material evidence."). He has not done so here.[9]

For example, in *United States v. Michaels*, we upheld a denial of the defendant's motion to compel certain interview notes under *Brady* where the defendant "offer[ed] no reason for believing that the notes contain[ed] significant material that [was] not contained in the typed [interview] summaries" the government had already provided. 796 F.2d at 1116. We also observed that "*Brady* does not establish a 'duty to provide defense counsel with unlimited discovery of everything known by the prosecutor'" or permit the defendant to "compel production of the notes so that he could search through them for anything useful." *Id.* (citation omitted).

Similarly, in *United States v. Mincoff*, we affirmed the district court's denial of a *Brady* motion where the defendant had "not identified any potentially exculpatory evidence that was not disclosed to him." 574 F.3d 1186, 1199–2000 (9th Cir. 2009). We held that "'mere speculation about materials in the government's files' [does] not require the district court to make those materials available, or mandate an *in camera* inspection." *Id.* at 1200 (quoting *Michaels*, 796 F.2d at 1116).

By contrast, in *United States v. Blanco*, we remanded to the district court to "order full disclosure by the government of any and all potential *Brady* . . . material" related to a

---

[9] Lucas correctly observes that we have yet to decide whether *Brady* applies to evidence that is relevant to a double jeopardy claim. We need not decide that question here because, even assuming that *Brady* applies to such evidence, Lucas still has not met the requisite showing to challenge the government's contention that it does not possess evidence of inter-sovereign collusion.

particular trial witness where the defendant showed that the government had suppressed *Brady* material concerning that witness. 392 F.3d at 392–95. Likewise, in *United States v. Doe*, we remanded to the district court to determine whether the government violated its *Brady* obligations in responding to the defendant's discovery requests *after* the defendant had made the required showing of materiality under Rule 16. 705 F.3d at 1150–53.

**2**

Relying on *United States v. Agurs*, 427 U.S. 97 (1976), Lucas argues that the government must disclose all relevant material in response to a defendant's specific request for information because *Brady*'s materiality standard is more lenient in this circumstance than it is when the defense makes no request or only a general request. Lucas recognizes, however, that although *Agurs* "suggested that the standard [of materiality] might be more lenient [where the defense makes a specific request and the prosecutor fails to disclose responsive evidence] than . . . [where] the defense makes no request or only a general request," *Bagley* later set forth a single test for materiality that applies regardless whether there was a specific request, a general request, or no request for *Brady* material. *Bagley*, 473 U.S. at 681–82 (modifying *Agurs*, 427 U.S. at 106). Under *Bagley*'s standard, "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 682. The government's obligation under *Brady* thus does not change simply because Lucas made a "specific" request for information.

Lucas further attempts to redefine the government's obligations under *Brady* by citing dicta discussing the difficulty that prosecutors face *before* trial in determining

what information will be material *after* trial. In *United States v. Olsen*, we stated in a footnote that a "prosecutor's speculative prediction about the likely materiality of favorable evidence . . . should not limit the disclosure of such evidence, because it is just too difficult to analyze before trial whether particular evidence ultimately will prove to be 'material' after trial." 704 F.3d 1172, 1183 n.3 (9th Cir. 2013). Relying on this observation, Lucas asserts that the government here should not be permitted to speculate about whether the district court may find certain evidence sufficient to support a double jeopardy claim. Instead, Lucas argues that the government must disclose all of the evidence in its possession responsive to Lucas's discovery requests.

While *Olsen* encouraged prosecutors to err on the side of disclosure, it did not alter the fundamental construct of *Brady*, which makes the prosecutor the initial arbiter of materiality and disclosure. *See Ritchie*, 480 U.S. at 60. Thus, unless Lucas can make a showing of materiality or demonstrate that the government has withheld favorable evidence, he must rely on "the prosecutor's decision [regarding] disclosure." *Id.* Lucas has not made the requisite showing under *Brady* to contest the prosecutor's assertion that the government lacks any evidence of inter-sovereign collusion.

Nor has Lucas shown that he is entitled to an evidentiary hearing regarding the degree of cooperation between federal and state authorities. In *Zone*, we denied the defendant's "request for remand and an evidentiary hearing because [the defendant had] not presented any evidence of undue coercion or collusion by federal authorities." 403 F.3d at 1106 (citing *Koon*, 34 F.3d at 1439). Moreover, in *Koon*, we held that the defendants' *proffered* evidence did not warrant remand for an evidentiary hearing where the defendants

provided more evidence of cooperation between federal and state authorities than Lucas has here. *Compare Koon*, 34 F.3d at 1439, *and supra* at 14, *with supra* at 16–18. Accordingly, the evidence Lucas has submitted does not warrant remand for an evidentiary hearing.

## V

For nearly forty years, the Supreme Court has reminded us that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* did not create one." *Weatherford*, 429 U.S. at 559. To obtain discovery under Rule 16, Lucas must make the requisite showing of materiality. And to challenge the government's representation that it does not have *Brady* evidence, Lucas must do more than speculate that *Brady* material exists. Because Lucas's proffer is insufficient to compel the government to provide the information he seeks, the district court did not err in denying his request for that information.

**AFFIRMED**.